Patrick Joseph DOYLE, Appellant,

v.

STATE of Alaska, Appellee.

No. 5115.

Court of Appeals of Alaska.

Sept. 10, 1981.

William H. Fuld, Kay, Christie, Fuld, Saville & Coffey, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Patrick Joseph Doyle was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OMVI) in violation of AS 28.35.030. Doyle was involved in a minor traffic accident and left the scene without providing required information to the driver of the other vehicle involved. He was traced to his home shortly thereafter by Alaska State Troopers, Laughman and Dennison, who knocked at Doyle's door, were admitted into his home by his son, and arrested him based upon his apparently intoxicated condition. On appeal he challenges the trial court's failure to suppress evidence, including his own admissions that he had been driving on the date of the alleged offense, testimony concerning his appearance and his performance of field sobriety tests, and the results of his breathalyzer examination. He also argues that the district court improperly instructed the jury concerning the breathalyzer presumption created by AS 28.35.033.

### I. ILLEGAL ENTRY

Doyle argues initially that the separate entries of Troopers Laughman and Dennison into his home were warrantless searches not falling under any recognized exception to the warrant requirement; and thus all evidence resulting from the troopers' entry into his home must be suppressed. Doyle focuses on the issue of whether the separate entries made by the troopers can be justified by the third party consent of his son.

Doyle argues that the invitations to enter made by his son were invalid by virtue of the fact that Doyle had expressly told a police dispatcher by telephone that he did not want to have any troopers in his home, so that his minor son could not override his father's invocation of his constitutional rights. Contrary to Doyle's argument, however, the record shows that he never expressly or impliedly indicated a refusal to the troopers' entry into his home before his son invited them in. Doyle told the dispatcher, when contacted at home shortly after his accident, that he would be leaving town and would not return until the following morning. Rather than being a refusal to speak with troopers, the statement implied that Doyle would be willing and available to talk to troopers at his home the following morning. To characterize Doyle's communication as a denial of consent to enter is simply inaccurate.

Doyle next argues that, as a matter of law, a child of between eleven and fourteen years of age simply does not have sufficient legal authority over his home to permit him to give a valid consent to a police search.

The concept is well established that a third party possessing a general and joint right to occupy, use, or enter property may effectively consent to the search of that property by law enforcement officers looking for evidence relating to a non-consenting occupant or user. *See, e. g., United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *Phillips v. State,* 625 P.2d 816, 817 n.5 (Alaska 1980); *Robinson v. State,* 578 P.2d 141 (Alaska 1978).

However, there are very few cases in which the issue of a child's ability to consent to a search has been considered. Notably, all the cases we have found which deal with the third party consent of a child uphold the child's consent; not one supports a general rule precluding a minor from giving valid consent. *See, e. g., Gregoire v.*

*Henderson*, 302 F.Supp. 1402, 1407 (E.D.La. 1969); *Blincoe v. People*, 494 P.2d 1285 (Colo.1972). Doyle argues that the cases upholding a child's consent are distinguishable in that the children in those cases "were in [an] equally situated position as the person against whom they gave the consent." Examination of the cases simply does not support Doyle's position; in fact, the cases do not appear to view as a significant factor the status of the consenting child vis-a-vis the person against whom the search is directed.[1]

In *Davis v. United States*, 327 F.2d 301 (9th Cir. 1964), two police officers and two customs agents went to the defendant's house in the early afternoon to interview the defendant. An officer knocked on the door, and the defendant's eight-year-old daughter answered. An officer said "I would like to talk to Albert Davis" [the girl's father], and the girl replied "come in." The officers stepped inside the doorway and were then able to see a quantity of marijuana in plain view. The court in *Davis* upheld the warrantless entry into the defendant's home and, in so doing, specifically rejected an argument based on the youth of the girl. The court held:

> From all the evidence before it, the trial court was entitled to conclude then that [the girl's] opening the door and invitation to enter were not unusual or unexpected or unauthorized acts. There was no evidence that the officers, in any way, suggested or requested an invitation to enter to search the house, or either by "compulsion of authority" or by physically breaking or "barging in", so much as even impliedly "forced" their way inside defendant's home.

*Id.* at 304.

In *State v. Jones*, 591 P.2d 796 (Wash. App.1979), two policemen knocked at the door of the defendant's apartment and asked the thirteen-year-old boy who answered if the defendant was present. The boy said "No, she isn't. Won't you please come in?" Thereupon the police entered and, from inside the doorway, observed stolen property. The court in *Jones* noted the problems posed by a child's consent to enter, but upheld the warrantless entry by the police:

> Some minors, simply by reason of their age or immaturity, may be incapable of consenting to a police entry; others may be overawed and will permit entry despite strict parental instructions or admonitions not to permit an entry. The record in this case appears to be devoid of either impediment . . . . Furthermore, it is reasonably clear in the case at bench that the officers entered the apartment peacefully and were not motivated primarily to search it.

*Id.* at 799. *See also Nelson v. Moore*, 470 F.2d 1192 (1st Cir. 1972), *cert. denied*, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973).

Both *Davis* and *Jones* are virtually indistinguishable from the present case. Both involved police entries into the home for the purpose of speaking to somebody rather than for conducting a search for evidence. While the age of the child is a factor to consider in determining the voluntariness of consent and the scope of the search to which a child is authorized to consent, *Davis* and *Jones* establish that there is no special rule which applies to the third-party consent of a child.

The issue of whether there was a proper consent in this case must be governed by the same general rules which apply to all warrantless search cases.[2] *See, e. g., Schraff v. State*, 544 P.2d 834 (Alaska

---

1. The Alaska Supreme Court's recent holding in *Phillips v. State*, 625 P.2d at 617 n.5, is especially relevant on this point. The court in *Phillips* emphasized that "joint access to, or control of" property is sufficient to give a person the authority to consent to a search; in so doing, the court rejected defendant's argument that a tenant with a lesser interest in property cannot validly consent to a search directed against a co-tenant with a greater interest. *See also Gregoire v. Henderson*, 302 F.Supp. at 1407.

2. The troopers' entry to talk with Doyle must be regarded as a search for the purpose of applying constitutional safeguards. *See Robinson v. State*, 578 P.2d at 144 n.11.

1975); *Erickson v. State*, 507 P.2d 508 (Alaska 1973). More specifically, the burden of proof is on the state to demonstrate by clear and convincing evidence that there was a valid consent to the search.[3] *Id.* To be valid, the consent must be voluntary: in other words it must be unequivocal, specific, and intelligently given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Pistro v. State*, 590 P.2d 884 (Alaska 1979).

▇ In the present case, the evidence supports the conclusion that Doyle's son gave a valid consent. The boy's age, estimated by the officers to be eleven to fourteen years, is sufficient so that he could be expected to exercise at least minimal discretion. Here, the boy's invitation to each trooper was volunteered; neither trooper requested entry and the boy had to repeat his invitation before Laughman entered. The nature of the invitation was limited in scope, not for a general search of the house but only so that the troopers could talk to his father, who was in the living room, an area of the house to which the child would ordinarily have free and open access. We find it significant that when Doyle told the troopers that they were in the house illegally, his wife contradicted him and said that Doyle's son had invited the troopers to enter, indicating that the boy's conduct was within the scope of what he was normally permitted to do. The boy's actions were in all respects consistent with an intelligent and appropriate response to the troopers' presence. On balance, the totality of the circumstances in this case indicates that the consent given by Doyle's son was voluntary and within the scope of his authority as an occupant of the dwelling.

## II. MIRANDA WARNINGS

▇ Doyle's second major argument is that he was questioned by Trooper Dennison without being given *Miranda* warnings, in violation of his right to counsel and right against self-incrimination under the United States and Alaska Constitutions; he thus asserts that his answers to questions prior to the *Miranda* warnings must be suppressed. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There are only two questions and answers directly involved in this argument: immediately upon entering Doyle's residence, Trooper Dennison asked Doyle whether the pickup in the driveway was his and whether Doyle had been driving it when the accident occurred. He received affirmative responses to both questions, and thereafter he immediately advised Doyle of his rights under *Miranda*.

The proposition is now settled that *Miranda* warnings will be required only when police interrogation occurs in a custodial setting. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). In *Hunter v. State*, 590 P.2d 888 (Alaska 1979), the Alaska Supreme Court specifically held that determination when interrogation is custodial is governed by an objective test. Thus, the court stated that a finding of custodial interrogation "requires some actual indication of custody, such that a reasonable person would feel he was not free to leave and break off police questioning." *Id.* at 895. As a prerequisite to a finding of custody there must actually be some police conduct depriving the defendant of freedom in some significant way. *Henry v. State*, 621 P.2d 1, 3 (Alaska 1980). The type of coercive effect which is inherent to some degree in all contacts between citizens and police, without more, does not convert events prior to an arrest into a custodial situation. *Id.*

Here, there is no specific affirmative conduct on the part of the officers that could reasonably have led Doyle to believe, at the time of the questioning, that he had been deprived of his freedom in any significant way or that the troopers would not have terminated their interview upon his request. Doyle argues that Trooper Laughman intended to restrain him; however,

---

**3.** Since the state prevailed below, the evidence on appeal must be viewed in the light most favorable to it. *Phillips v. State*, 625 P.2d at 817 n.5; *Gray v. State*, 596 P.2d 1154, 1158 n.18 (Alaska 1979).

under the objective standard for determining custody, the subjective intent of an officer is entirely irrelevant unless communicated to the defendant. *Hunter v. State*, 590 P.2d at 897 n.35. Doyle's argument that he was entitled to *Miranda* warnings because he was already the "focus of investigation" when Trooper Dennison arrived is similarly disposed of by *Hunter*, which specifically recognized that custody, not focus of investigation, is the crucial factor in deciding when *Miranda* warnings have to be given.

Analyzing the circumstances of · the present case in light of *Hunter* leaves little indication of an affirmative deprivation of freedom. The interrogation itself was extremely short, being limited to two questions. Though there were four persons connected with the Alaska State Troopers present at the time of the interrogation, one was a high school student. Even assuming all four were in uniform, a point upon which the record is silent, the evidence shows that none of the troopers besides Dennison asked any questions or did anything to make their presence overly intrusive; all had been invited in. Statements of both the dispatcher and Trooper Laughman should reasonably have indicated to Doyle that the troopers were there only to interview him about a minor accident, and not to place him under arrest. Doyle was seated in an arm chair in his own living room, was not required to move, nor was he subjected to any type of restraint, either physical or implied. Doyle's wife and son were also in the room.

Although Doyle was ultimately arrested, the arrest did not immediately follow his answers to the two questions which were asked. Instead, Doyle's statements led Trooper Dennison to request Doyle to perform field sobriety tests; only upon conclusion of these tests was a decision made to take Doyle into custody. It is also significant to note that Doyle himself apparently felt that he could terminate the police contact even after he had performed poorly on his field sobriety tests, which was well beyond the point in time when his *Miranda* warnings had been given to him.

In short, this appears to be a situation where the only coercion or deprivation of freedom was the type inherent in any contact between police and private citizens. It is the type of coercion which was specifically found in *Henry* to be insufficient to require that the constitutionally mandated *Miranda* warning be given.[4] We therefore conclude that Doyle's statements made before the *Miranda* warning need not be suppressed.

### III. JURY INSTRUCTION

The arguments made by Doyle concerning Instruction No. 8, which explained to the jury the breathalyzer presumption created by AS 28.35.033, are without merit. The defense at trial was apparently based upon the theory that the results of the breathalyzer exam were invalid because Doyle had consumed alcohol after returning home from the accident. Doyle contends that Instruction No. 8 was confusing as to the time that the presumption applies. However, the language seems to us to be unequivocal with respect to the application of the presumption. It makes clear the fact that a breathalyzer of .10 percent or greater gives rise to a presumption that the defendant was under the influence "at the time of the alleged offense," which is precisely what AS 28.35.033 contemplates. That provision reads, in pertinent part:

> ... the amount of alcohol in the person's blood *at the time alleged, as shown by chemical analysis of the person's breath*, shall give rise to the following presumptions ... [Emphasis added.]

Thus, under the wording of AS 28.35.033, the breathalyzer result is clearly viewed as the presumptive equivalent of the amount of alcohol in the person's blood "at the time alleged"; in other words, at the time that the offense was committed.

---

4. Compare the circumstances of this case with *Peterson v. State*, 562 P.2d 1350, 1361–62 (Alaska 1977); *JMA v. State*, 542 P.2d 170 (Alaska 1975); and *Blue v. State*, 558 P.2d 636, 642 n.9 (Alaska 1977).

The state is correct in pointing out that to construe AS 28.35.033 to the contrary would be anomalous. If the statute were construed to create only a presumption that a person with .10 percent or more blood alcohol is under the influence of intoxicating liquor at the time the test is administered, then it would be necessary for the state to call expert witnesses in every case to establish by extrapolation the blood alcohol content of the defendant at the time of the alleged offense. Since one of the the obvious reasons for the breathalyzer presumption is to avoid the necessity of calling expert witnesses in each case, such a construction would be senseless.

■ Doyle argues, secondly, that Instruction No. 8 improperly shifts the burden of proof to the defendant. Contrary to this assertion, Instruction No. 8 is explicit in stating that the jury "may consider all of the facts and circumstances in evidence, as they relate to the defendant's condition at the time of the alleged offense" in deciding whether the presumption has been rebutted. There is no mention whatsoever in the instruction of any burden being placed on the defendant, and the jury in the case was given a standard instruction informing them that the prosecution had the burden of proving every essential element of the offense. Presumptions such as the one created by AS 28.35.033 have long been held permissible in criminal cases so long as they are restricted to empirically valid inferences. *See e. g., U.S. v. Gainey*, 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); *see also* Alaska R.Evid. 303(a)(1) and the commentary thereto.

Similar statutory presumptions have consistently been upheld against claims that they shift the burden of proof improperly to the defendant. *See, e. g., State v. Bedel*, 193 N.W.2d 121 (Iowa 1971); *State v. Larrabee*, 156 Me. 115, 161 A.2d 855 (1960); *People v. Guilford*, 20 A.D.2d 192, 245 N.Y. S.2d 781 (1964); *State v. Cooke*, 270 N.C. 644, 155 S.E.2d 165 (1967); *State v. Raynor*, 17 N.C.App. 707, 195 S.E.2d 309 (1973).

■ Doyle's final contention is that Instruction No. 8 should not have been given because there was evidence presented that Doyle had consumed alcohol between the time of the accident and the time the breathalyzer was administered to him. This argument simply overlooks the point that it is up to the jury to decide the weight to be given to that evidence. The jury was free, if it chose, to reject the evidence concerning Doyle's consumption of alcohol, or it could have concluded that the amount of alcohol he consumed after the accident was insufficient to account for his score on the breathalyzer. In either event the jury would be entitled to be informed of and to rely upon the presumption created by AS 28.35.033. In short, it is clear that the issue of whether and to what extent Doyle's consumption of alcohol after the accident affected his breathalyzer result is a question which was properly left for the jury by Instruction No. 8.

AFFIRMED.