Submitted on record and briefs July 25, reversed and remanded December 4, 1986

STATE OF OREGON,
*Appellant,*

*v.*

HOLLIS COLIN SCOTT,
*Respondent.*

(10-85-02604; CA A37990)

729 P2d 585

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Robert M. Atkinson, Assistant Attorney General, Salem, filed the brief for appellant.

No appearance for respondent.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

The state appeals a pretrial order granting defendant's motion to suppress evidence obtained as a result of a warrantless search of his home. The issue is whether the trial court erred when it decided that, as a matter of law, defendant's daughter could not validly consent to the search, because she is a minor. The state argues that such a *per se* rule is not required by either the Fourth Amendment or Article I, section 9, of the Oregon Constitution.[1] We agree and reverse.

In June, 1984, defendant reported to the police that his home had been burglarized and that a television, a VCR, stereo components and other property had been taken. Subsequent information suggested that the property was, in fact, still in defendant's home. Relying on information that defendant would be home on December 26, 1984, two police officers went there on that day. When they arrived, they found no one home. Through a large window they saw a television, a VCR and a rack of stereo components. Although the stereo components were not plainly visible, the television and the VCR matched the description of the items reported stolen. Because no one was home, the officers moved their car to a place where they could watch the house. Soon thereafter, defendant's car pulled into the driveway. The officers approached as two young women were entering the home. One, who was later identified as defendant's daughter, was opening the door with a key; the other was defendant's stepdaughter. The officers, who were not in uniform, identified themselves as state police officers and stated that they were there because of "information that some property [defendant] reported earlier as being stolen might have been recovered and was believed to be in the residence." They testified that they asked if they "could come in and check the numbers on these articles to confirm that they were, in fact, the same," and that defendant's daughter said, "Yes," stepped out of the doorway and let the officers in. One of the officers testified that she told him that she had moved into her father's home the day before.

---

[1] At trial, defendant's motion claimed that the search was invalid under Article I, section 9, of the Oregon Constitution and the Fourth Amendment. He did not claim that his rights under the Oregon Constitution were greater than under the federal constitution. It is not clear from the record whether the trial court ordered suppression of the evidence based on the state constitution, the federal constitution, or both. Accordingly, we must analyze both provisions.

The daughter's testimony conflicts with that of the officers in at least two significant particulars. First, she denied that she was living at defendant's home on December 26. She testified that she lived with her mother in Eugene and was attending high school there and that she was at her father's house only for a Christmas visit. She also denied that the officers asked for, or that she gave, permission to search. Rather, she testified that the police asked only to enter the house to talk. She further testified that she objected when the officers began "looking around."

The trial court did not resolve those evidentiary conflicts. Instead, the court ruled that "before law enforcement officers can rely upon the consent of an individual to search the premises, they must show that the consent was obtained from an individual who had reached the age of majority." Because the daughter was 16, the trial court granted the motion to suppress.

No Oregon case has decided whether a minor child can consent to a search of a parent's home for evidence to be used against the parent. Normally, we would analyze the state constitution first. *See Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981). We reverse the usual order here to facilitate our analysis. Under the Fourth Amendment, a warrantless search is *per se* unreasonable unless the search comes within one of the specific and well-defined exceptions to the warrant requirement. *State v. Carsey, 295 Or 32, 664 P2d 1085 (1983). One of those exceptions is a search pursuant to consent lawfully obtained "from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." United States v. Matlock,* 415 US 164, 171, 94 S Ct 988, 39 L Ed 2d 242 (1974). In *Matlock,* the court explained the "common authority" concept:

> "Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, * * * but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." 415 US at 172 n 7. (Citations omitted.)

In the present case, the trial court adopted a *per se* rule that a search based on the third-party consent of a minor is not valid. A few jurisdictions appear to have adopted such a rule for Fourth Amendment purposes. *See, e.g., Padron v. State,* 328 So 2d 216, 217-18 (Fla Dist Ct App 1976), *cert den* 339 So 2d 1172 (Fla 1976) ("[I]t seems clear to us * * * that a 16-year-old child does not share 'common authority' with his father over the premises of a common dwelling place provided by the latter"); *see also State v. Malcolm,* 58 Del 1, 6, 203 A2d 270 (Del Super Ct 1964) ("[I]t goes without saying that if the state had to rely on the consent of the minor son necessarily I would have to hold that such consent would be insufficient.").

Most jurisdictions, however, have declined to adopt a *per se* rule; they apply *Matlock's* "common authority" test, treating age as only one element in determining the scope of the minor's authority to consent and whether the minor's consent was knowing and voluntary. *See, e.g., Doyle v. State,* 633 P2d 306, 307-308 (Alaska App 1981) ("On balance, the totality of the circumstances in this case indicates that the consent given by [defendant's minor] son was voluntary and within the scope of his authority as an occupant of the dwelling."); *People v. Swansey,* 62 Ill App 3rd 1015, 1018, 379 NE2d 1279 (1978) ("Where consent by minors has been at issue it is clear that age was only one of a number of factors considered by the courts."); *State v. Folkens,* 281 NW2d 1, 4 (Iowa 1979) ("The minority of the consenting party does not in itself vitiate the consent, but does bear on the voluntariness of it."); *Commonwealth v. Maxwell,* 505 Pa 152, 162, 477 A2d 1309, *cert den* 469 US 971 (1984) ("Although age is one element to acknowledge in ascertaining whether consent was given willingly, minority status alone does not prevent one from giving consent."); *State v. Jones,* 22 Wash App 447, 451-52, 591 P2d 796 (1979) ("Some minors, simply by reason of their age or immaturity, may be incapable of consenting to a police entry; others may be overawed and will permit entry despite strict parental instructions or admonitions not to permit an entry. The record in this case appears to be devoid of either impediment.").[2]

---

[2] With the exception of *Commonwealth v. Maxwell, supra,* 505 P2d at 162, which specifies the Fourth Amendment, the out-of-state cases we cite do not indicate whether they were decided under the Fourth Amendment or, instead, under a similar state constitutional provision. Because they rely on Fourth Amendment cases, and

We adopt the majority rule for the purposes of the Fourth Amendment for several reasons. First, in *State v. Carsey, supra,* the court declined, for purposes of the Fourth Amendment, to adopt a *per se* rule that parents can consent to searches of their children's rooms:

> "We are not prepared to hold * * * that the relation of parent and child, as a matter of law, in and of itself and in every case, necessarily creates the foundation for a valid consent search. In many, perhaps most, cases, the facts would support such a finding. * * *
>
> "* * * * *
>
> "Although the parent-child relationship is an important factor to be considered in determining the validity of the consent in a case in which the consent is obtained from a parent, the validity of consent involves consideration of other factors, an important one being the consenting parent's control over the premises for the search of which consent was given." 295 Or at 42.

Likewise, we are not prepared to hold, as a matter of law, and for every case, that minors cannot consent to searches; instead, age is one factor in determining the validity of the consent. Second, it will simplify law enforcement if the same rule applies to both adults and children. Finally, the Fourth Amendment prohibits only unreasonable searches. As the state notes in its brief, the facts determine reasonableness:

> "While it may be unreasonable to seek consent from a 16-year-old whose father has already refused to permit a search, *see State v. Padron, supra,* it is evident that it is reasonable for a 14-year-old rape victim to be able to give a valid consent to a search of her home when her mother is hospitalized and she has been raped in her own bed by her mother's cohabitant."

In sum, the trial court erred in adopting a *per se* rule under the Fourth Amendment. The remaining question is whether a *per se* rule applies under Article I, section 9. Because we agree with the reasoning used in the federal cases discussed above, we decline to adopt a rule different from the

---

because they do not mention the state constitutions, we assume that they were Fourth Amendment cases. In any event, their reasoning is more important to our decision than is their specific constitutional basis.

federal rule. Thus, under both the Oregon and federal constitutions, age is merely one factor to be considered in determining the scope of the minor's authority to consent and whether the minor's consent was knowing and voluntary.

The scope of the daughter's authority, if any, to consent depends in part on whether she was a guest in the home or a resident. There is conflicting evidence on that point and on whether she actually consented, and the trial court must resolve the conflict. We therefore reverse and remand for the trial court to re-examine the record in the light of this opinion.

Reversed and remanded.