KELLUM, Judge.
 
 [1]
 

 The appellant, Joseph Michael Allen, was convicted of one count of production of obscene matter containing a visual depiction of a person under 17 years of age, in violation of § 13A-12-197, Code of Alabama 1975. Allen was sentenced to 10 years’ imprisonment. That sentence was split, and he was ordered to serve 24 months.
 

 The evidence presented by the State established the following. On December 10, 2006, the minor daughter of Joseph Allen came across a video on her parents’ computer, which was in their bedroom, showing her friend, B.M.,
 
 [2]
 
 who was 15 years old at the time, naked in her father’s shower. The daughter telephoned B.M. to tell her about the discovery, at which time
 
 *527
 
 B.M. and her father came to the Allen house to view the video on the Allen’s computer. Upon viewing the video, B.M.’s father telephoned the Sumter County Sheriffs Department to report the incident. Allen’s daughter allowed Deputy Sammy Upchurch and Sgt. Tommy Lewis to come inside the house to view the video. After watching the video, the officers told the daughter to telephone her father and ask him to return home.
 

 The officers waited at the Allen house until Allen and his wife returned. Deputy Upchurch explained to Allen what they had found. Allen informed the officers that the computer on which the video was found was his wife’s computer, so they asked for her permission to search the residence and to seize any evidence they deemed appropriate. She complied, and the officers seized the computer and other accessories. On March 13, 2007, the Sumter County grand jury indicted Allen for one count of production of obscene matter containing a visual depiction of a person under 17 years of age, in violation of § 13A-12-197, Code of Alabama 1975.
 

 On November 27, 2007, the day of Allen’s trial, the trial court held a hearing to determine whether the evidence found in Allen’s house should be suppressed. Deputy Upchurch testified that he responded to the dispatch but that he did not know why he was being sent to the Allen household. Upon arrival, Upchurch found the daughter, who was 17 years old at the time, waiting outside. Upchurch testified that “[the daughter] invited me into the residence, said there was something I needed to see.” (R. 23.) Upchurch said that he did not threaten or coerce the daughter to be allowed to come inside. After inviting Deputy Upchurch and Sgt. Lewis inside, the daughter played for them the video file stored on her parents’ computer. After watching the video, Sgt. Lewis asked the daughter to telephone her father. Sgt. Lewis spoke with Allen and informed him that he needed to return to his house because law-enforcement officers needed to speak with him about something they found on his computer.
 

 When Allen returned home, Deputy Up-church informed him that Allen might have something criminal on his computer and explained what the officers had found. Deputy Upchurch testified that Allen offered no explanation for the video. When asked about the computer, Allen stated that the computer was his wife’s computer. Lewis then asked Mrs. Allen for consent to seize the computer and she consented. Mrs. Allen, Deputy Upchurch, and Sgt. Lewis all testified that the officers did not threaten Mrs. Allen and she freely consented to the search. The officers watched the video again before seizing the computer, monitor, keyboard, digital camera, and the digital-camera docking station along with several compact discs and albums of photographs.
 

 The daughter also testified at the suppression hearing. She testified that she never invited the officers to come inside, but instead said that one of the deputies asked her if they could come inside the house to which she replied, “yes.” She testified that the officers did not ask to go back into the bedroom, but once they were in the bedroom, one of the officers asked her to play the video for them. The daughter also testified that she was not threatened or coerced into giving her consent to enter the house but freely consented to the request.
 

 Without explanation, the trial court denied Allen’s motion to suppress. Allen proceeded to trial where he was convicted on the one count of production of obscene matter containing a visual depiction of a person under 17 years of age, as charged in the indictment. Allen appealed.
 

 
 *528
 
 I.
 

 Allen first challenges the trial court’s denial of his motion to suppress on the grounds that his Fourth Amendment rights were violated when police conducted a warrantless search of his house. Allen argues that his 17-year-old daughter could not provide third-party consent to search his house. In support of this argument, Allen contends that his daughter did not consent to the search, that as a minor, she lacked the ability and capacity to consent to the search, and that, assuming she did consent and had the authority and capacity to provide third-party consent, she could not consent to a search of his bedroom specifically.
 

 “ ‘This Court reviews de novo a circuit court’s decision on a motion to suppress evidence when the facts are not in dispute.’[
 
 3
 
 ]
 
 See, State v. Hill,
 
 690 So.2d 1201, 1203 (Ala.1996);
 
 State v. Otwell,
 
 733 So.2d 950, 952 (Ala.Crim.App.1999).”
 
 State v. Davis,
 
 7 So.3d 468, 470 (Ala.Crim. App.2008). This Court “must make all reasonable inferences and credibility choices in support of the trial court’s ruling.”
 
 Allen v. State,
 
 689 So.2d 212, 216 (Ala.Crim.App.1995). The trial court’s decision concerning conflicting evidence given at a suppression hearing is binding upon this Court and will not be disturbed “unless it is palpably contrary to the weight of the evidence.”
 
 State v. Smith,
 
 715 So.2d 925, 927-28 (Ala.Crim.App.1998). “In reviewing a trial court’s ruling on a motion to suppress, this Court may consider the evidence adduced both at the suppression hearing and at the trial.”
 
 Smith v. State,
 
 797 So.2d 503, 526 (Ala.Crim.App. 2000), quoting
 
 Henry v. State,
 
 468 So.2d 896, 899 (Ala.Crim.App.1984), cert. denied, 468 So.2d 902 (Ala.1985).
 

 “All evidence obtained by a search that is conducted in violation of the Constitution of the United States is inadmissible in a state court.
 
 Mapp v. Ohio,
 
 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961);
 
 Loyd v. State,
 
 279 Ala. 447, 186 So.2d 731 (1966). The Fourth Amendment to the Constitution of the United States bans all unreasonable searches.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a search is unreasonable depends upon the facts and circumstances of the particular case.
 
 Sibron v. New York,
 
 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Warrantless searches are per se unreasonable unless they fall within a recognized exception.
 
 Ex parte Hilley,
 
 484 So.2d 485 (Ala.1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a
 
 Terry
 
 ‘stop and frisk’ situation.
 
 Daniels v. State,
 
 290 Ala. 316, 276 So.2d 441 (1973). Where a search is executed without a warrant, the burden falls upon the State to show that the search falls within an exception.
 
 Kinard v. State,
 
 335 So.2d 924 (Ala.1976).”
 

 Ex parte Tucker,
 
 667 So.2d 1339, 1343 (Ala.1995).
 

 It is well settled that “consent to search may be given by a third party who possesses common authority over the premises or personal effects sought to be searched.”
 
 Maples v. State,
 
 758 So.2d 1,
 
 *529
 
 25 (Ala.Crim.App.), aff'd, 758 So.2d 81 (Ala.1999). “The authority which justifies the third-party consent rests on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.”
 
 United States v. Matlock,
 
 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 89 L.Ed.2d 242 (1974). “ ‘The burden of establishing th[e] common authority [necessary for a valid consent] rests upon the State’ and may be met by proof of either actual or apparent authority.”
 
 Smiley v. State,
 
 606 So.2d 213, 215 (Ala.Crim.App.1992), quoting
 
 Illinois v. Rodriguez,
 
 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990).
 

 The record indicates that the trial court did not offer any explanation for its decision to deny Allen’s motion to suppress. Thus, we do not know whether the trial court based its decision upon its belief that the officers were invited into the house by the daughter or whether it believed she properly consented to the officer’s request to enter the house to see the video. Although we recognize that the trial court is in a better position than is this Court to determine the credibility of witnesses testifying at a suppression hearing,
 
 see, Atwell v. State,
 
 594 So.2d 202, 212 (Ala.Crim.App.1991), cer
 
 t. denied,
 
 594 So.2d 214 (Ala. 1992), we deem it prudent to address the question of whether the daughter, a minor in this State, had the capacity and ability to provide valid third-party consent to a warrantless search of her parents’ house.
 

 The issue whether a minor child can provide valid third-party consent to a police request to search the house of the minor child’s parents when no parent is present is an issue of first impression in this State.
 
 [4]
 
 After surveying the caselaw in this country regarding this issue, we conclude that Alabama should join those states that hold that a minor can provide valid third-party consent to a request to conduct a warrantless search of a parent’s house.
 
 [5]
 

 
 *531
 
 In determining which factors a trial court must consider when deciding whether a minor could have provided valid third-party consent to a request to conduct a warrantless search, we turn to Georgia and
 
 Atkins v. State,
 
 173 Ga.App. 9, 325 S.E.2d 388 (1984). In
 
 Atkins,
 
 police traveled to Atkins’s house after receiving anonymous tips that evidence of recent burglaries would be found there. The police did not have probable cause and sought to obtain consent to search the premises. Upon arriving at the house, the police encountered Atkins’s 17-year-old brother, who orally consented to a search of the premises and signed a written consent form. Evidence implicating Atkins in the robberies was subsequently found at the house. The trial court denied Atkins’s motion to suppress the evidence seized from the search.
 

 On appeal, Atkins argued that, as a matter of law, his 17-year-old brother did not have sufficient legal authority over the house to enable the brother to give valid third-party consent to a warrantless search of the premises. The Court of Appeals of Georgia rejected a bright-line rule precluding minors from giving valid third-party consent and instead held that each case depends on “the consentor’s ‘common authority over or other sufficient relationship to the premises or effects sought to be inspected.’ ”
 
 Atkins,
 
 173 Ga.App. at 12, 325 S.E.2d at 391, quoting
 
 United States v. Matlock,
 
 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). The court gleaned four important principles from the caselaw in other states and announced a four-part test by which each situation would be assessed:
 

 “In cases where the person consenting to the search has not attained the age of eighteen, the courts have measured the minor’s control over the area searched by examining whether the minor lived on the premises; whether the minor had a right of access to the premises and the right to invite others thereto; whether the minor was of an age at which he or she could be expected to exercise at least minimal discretion; and whether officers acted reasonably in believing that the minor had sufficient control over the premises to give a valid consent to search....
 

 “After reviewing the case law on the subject, we are unwilling to adopt appellant’s suggestion that a minor is, as a matter of law, incapable of giving a valid consent to search. Instead, we chose to adopt a more studied approach to the
 
 *532
 
 issue and examine as suggested by the Supreme Court in
 
 [United States v.] Matlock,
 
 [415 U.S. 164 (1974) ], the minor’s relationship to the premises or effect sought to be inspected. In so doing, we will scrutinize closely the indicia of authority used by several of our sister states: the minor’s age, address, right of access and right of invitation.”
 

 173 Ga.App. at 11-12, 325 S.E.2d at 390-91.
 

 We believe that the
 
 Atkins
 
 standard is the most thorough test by which this Court and the trial courts of Alabama can best determine whether a minor’s third-party consent was valid. Accordingly, the State of Alabama must affirmatively answer the following questions in order to support a contention that a person under the age of 18 provided valid third-party consent to a request to a conduct a war-rantless search: First, did the minor live in the home or share the premises with the absent parent? Second, did the minor have the right of access to the premises searched and the right to invite others to the premises? Third, did the totality of the circumstances indicate that the police were reasonable in their determination that the minor had sufficient control over the premises? Finally, did the facts attendant to the encounter — including the minor’s age, maturity, and intelligence— indicate that the minor could exercise sufficient discretion to freely, knowingly, and voluntarily consent to the search and not merely acquiesce to a request of a police officer? Failure to satisfy all four prongs of this test will preclude a finding that the minor gave valid third-party consent.
 

 Applying this new test to the facts at hand, we conclude that the daughter did, in fact, provide valid consent to search the premises. Under the first prong, it is readily apparent that she lived at the residence subject to the search. At trial, both the daughter and Allen testified that she lived at the house where the search took place. In support of the second prong, it appears from the record that she had both the right of access to the premises searched and the right to invite others to the premises. The daughter testified at trial that the computer on which she found the video clip of B.M. was located in her parents’ bedroom. She also testified that she generally had free access to the computer and that she could use it any time she wanted to do so. She knew, however, that she was not supposed to open the drawers of the table on which the family computer sat. The computer was password-protected, but before leaving town on that day, her parents entered the password so that she could access the Internet while they were away. Furthermore, on the day she discovered the video, her cousin was at the house with her. Throughout the trial, the daughter and Allen referenced occasions during which she had invited other people, specifically, B.M., over to the house. Accordingly, it is apparent that the minor daughter had a right of access to the bedroom and the computer and that she enjoyed the right of invitation.
 

 Next, we must consider whether the police made a reasonable determination that the daughter had sufficient control over the premises to give a valid consent to search. When the officers responded to Allen’s house, the daughter was the only member of the household present. Her parents apparently trusted her judgment enough to leave her home alone on the day in question, while they traveled out of town. The daughter was 17 years old at the time. Under the circumstances, we believe it was reasonable for the officers to conclude that she had sufficient
 
 control
 
 over the premises to consent to a search.
 

 
 *533
 
 Finally, we must consider whether it appears from the circumstances that the daughter could exercise sufficient discretion to freely, knowingly, and voluntarily consent to the search and not merely acquiesce to a request by the officers to conduct a warrantless search. As stated above, the daughter was 17 years old at the time she discovered the video on the family computer while she was home alone. It is apparent that she could exercise minimal discretion because she immediately realized that what she had found on the computer was inappropriate and possibly illegal. She immediately telephoned B.M. to tell B.M. what she had found on her parents’ computer. This testimony evidenced discretion on the part of the 17-year-old.
 

 At the suppression hearing, Deputy Up-church testified that he did not threaten the daughter, tell her that he had to come inside the house, or enter the house without being asked to do so. Deputy Up-church testified that the daughter invited the officers to enter because “there was something [the officers] needed to see.” (R. 23.) Sgt. Lewis also testified that the daughter extended this invitation. At trial, she claimed that she did not invite the officers inside; rather, she said, she consented to the officers’ request to enter the house to see the video in question. When asked about the request to search, the daughter told the court that she gave consent freely and that she was not threatened or coerced in any way by the officers. We believe the fourth prong of this test is satisfied as the facts indicate that her consent to the officers’ request was voluntarily, freely, and intelligently given.
 

 It is apparent to this Court that a minor can provide valid third-party consent to a request to conduct a warrantless search in Alabama. Furthermore, it is apparent that Allen’s daughter had the authority and capacity to consent to a search of her father’s home. The responding officers acted reasonably, given the attendant circumstances surrounding the encounter and subsequent search. Accordingly, we hold that the trial court did not err in denying Allen’s motion to suppress.
 

 II.
 

 Allen also argues that the trial court erred in refusing to instruct the jury on the lesser-included offense of possession of obscene matter containing a visual depiction of a person under 17 years of age. Specifically, Allen argues that there was ample evidence to justify an instruction on the lesser-included offense.
 

 “A trial court has broad discretion in formulating its jury instructions, provided those instructions accurately reflect the law and the facts in the case.”
 
 Ingram v. State,
 
 779 So.2d 1225, 1258 (Ala.Crim.App.1999), citing
 
 Raper v. State,
 
 584 So.2d 544 (Ala.Crim.App.1991). “The trial court’s refusal to give written requested charges does not constitute error when the charges are covered in the trial court’s oral charge, are confusing or misleading, are inapplicable or abstract, or are an incorrect statement of the applicable law.”
 
 Toles v. State,
 
 854 So.2d 1171, 1175 (Ala.Crim.App.2002), quoting
 
 Stout v. State,
 
 547 So.2d 894, 898-99 (Ala.Crim.App.1988). In
 
 Lansdell v. State,
 
 25 So.3d 1169 (Ala.Crim.App.2007), we explained:
 

 “A defendant is entitled to a charge on a lesser-included offense only if there is any reasonable theory from the evidence to support the charge.
 
 Ex parte Smith,
 
 756 So.2d 957, 963 (Ala.2000). As this Court stated in
 
 Chambers v. City of Opelika,
 
 698 So.2d 792 (Ala.Crim.App.1996):
 

 “ ‘
 
 “Where all the elements of an offense separate from the offense charged are present in or are included
 
 *534
 
 among elements of [the] charged offense, such separate offense is a lesser included offense for which [the] defendant may be convicted, though acquitted of the offense charged. To be necessarily included in the greater offense, the lesser must be such that it is impossible to commit the greater without first having committed the lesser.” ’
 

 “698 So.2d at 794 (quoting
 
 Sharpe v. State,
 
 340 So.2d 885, 887 (Ala.Crim.App. 1976) (emphasis added in Chambers)).
 

 Lansdell,
 
 25 So.3d at 1180-81.
 

 Section 13A-l-9(a)(l), Ala.Code 1975, provides: “A defendant may be convicted of an offense included in an offense charged. An offense is included if: (1) [i]t is established by proof of the same or fewer than all the facts required to establish the commission of the offense charged.” A person commits the crime of production of obscene matter containing visual depiction of a person under 17 years of age if he or she “knowingly films, prints, records, photographs, or otherwise produces any obscene matter that contains a visual depiction of a person under the age of 17 years engaged in any act of sadomasochistic abuse, sexual intercourse, sexual excitement, masturbation, breast nudity, genital nudity or other sexual conduct.” § 13A-12-197, Ala.Code 1975. A person commits the crime of possession of obscene matter containing visual depiction of a person under 17 years of age if he or she “knowingly possesses any obscene matter that contains a visual depiction of a person under the age of 17 years engaged in any act of sado-masochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct.” § 13A-12-192(b), Ala.Code 1975.
 

 Under the facts at hand, we cannot say the trial court erred in refusing to charge the jury on possession of obscene matter containing visual depiction of a person under 17 years of age as a lesser-included offense of the offense of production of obscene matter containing visual depiction of a person under 17 years of age as charged in the indictment. The indictment charges Allen with producing obscene matter that contained a depiction of a person under the age of 17, B.M., who was 15-years-old at the time the video was made, engaged in “breast nudity,” in violation of § 13A-12-197. (C. 18.) The evidence presented at trial, the video, clearly showed B.M.’s bare breasts as she exited the bathroom after showering, but does not show her genitals or depict her engaging in any other act covered by the statute. The video does not depict an act of “sadomasochistic abuse, sexual intercourse, sexual excitement, masturbation, genital nudity, or other sexual conduct” under § 13A-12 — 192(b), Code of Alabama 1975. Thus, the evidence presented would not have supported a conviction for possession of obscene matter containing a visual depiction of a minor under the age of 17 because the possession statute, § 13A-12-192(b), does not include “breast nudity” among the proscribed acts, unlike the production statute, § 13A-12-197. Accordingly, under these facts, it was possible for Allen to commit the purported “greater” offense without committing the “lesser” offense.
 
 See, Chambers,
 
 698 So.2d at 794. The trial court correctly refused to instruct the jury on possession of obscene matter containing visual depiction of a person under 17 years of age.
 

 Based on the foregoing, the judgment of the trial court is due to be affirmed.
 

 AFFIRMED.
 

 WISE, P.J., and WELCH and WINDOM, JJ., concur.
 

 [1]
 

 . This case was originally assigned to another judge on the Court of Criminal Appeals; it was reassigned to Judge Kellum on January 20, 2009.
 

 [2]
 

 . Initials are used throughout the decision to protect the anonymity of the victim.
 
 See,
 
 Rule 52, Ala. R.App. P.
 

 [3]
 

 . Although Allen challenges on appeal the State's contention that the daughter actually consented to the officers' request to search, we note that no evidence was presented either at the suppression hearing or at trial to refute the contention that she consented. The daughter herself testified that she consented to the request to search. (R. 45-47.) Accordingly, because the evidence is not disputed, we review this issue under a de novo — and not a "clearly erroneous" — standard of review.
 

 [4]
 

 . We note that the case of
 
 Murphy v. State,
 
 355 So.2d 1153 (Ala.Crim.App.1978), has been cited positively by other jurisdictions in support of the notion that Alabama recognizes the proposition that a minor may provide valid third-party consent to a request to conduct a warrantless search.
 
 See, Atkins v. State,
 
 173 Ga.App. 9, 11, 325 S.E.2d 388, 390 (1984)(citing Murphy). However, in
 
 Murphy,
 
 this Court found that police had consent to search the appellant’s house based upon a written consent form signed by the appellant's 22-year-old, cotenant son, and not based upon the actions of the 12-year-old daughter who actually answered the door upon police arrival. Thus, the question whether a minor may provide valid third-party consent to a police request to conduct a warrantless search has never been squarely addressed by this Court.
 

 [5]
 

 . Currently, 20 states allow minors to provide valid third-party consent to a search of a parent’s house.
 
 See, Doyle v. State,
 
 633 P.2d 306, 309 (Alaska Ct.App.1981) ("To be valid, the consent [to search] must be voluntary: in other words it must be unequivocal, specific and intelligently given_The boy’s age, estimated at 14 years, is sufficient so that he could be expected to exercise at least minimal discretion.”);
 
 State v. Ayala,
 
 178 Ariz. 318, 319, 873 P.2d 656, 657 (Ariz.Ct.App.1993) ("The issue in a case such as this is not whether the boy had actual authority to consent to the officers' entry and access to the bedroom, but, rather, whether it reasonably appeared that the boy had common authority over the area which would render valid his consent to the officer’s presence.”);
 
 Harmon v. State,
 
 277 Ark. 265, 641 S.W.2d 21 (1982)
 
 reversed on other grounds by White v. State,
 
 290 Ark. 130, 717 S.W.2d 784 (1986) (holding that a trial court did not err in finding that officers could reasonably believe that a minor who said that she understood consent searches could consent to a warrantless search);
 
 People v. Hoxter, 75
 
 Cal.App.4th 406,
 
 *530
 
 89 Cal.Rptr.2d 259 (1999) (holding that officer's belief that a 16-year-old had apparent authority to consent was made in good faith and was reasonable under the circumstances);
 
 Blincoe v. People,
 
 178 Colo. 34, 494 P.2d 1285, 1286 (1972) ("In our opinion, the fact that one is a minor does not necessarily preclude effective consent”);
 
 Saavedra v. State,
 
 622 So.2d 952 (Fla. 1993) (holding that a minor may provide valid third-party consent if the state can show the minor shared the home with a nonconsenting, absent parent, the police had a reasonable belief that the minor had authority to consent, and the minor freely and voluntarily consented to the search);
 
 Atkins v. State,
 
 173 Ga.App. 9, 325 S.E.2d 388 (1984) (holding that a determination of whether a minor can consent to a search will be based up the minor’s age, address, right of access, and right of invitation);
 
 People v. Holmes,
 
 180 Ill.App.3d 870, 873, 536 N.E.2d 1005, 1007, 129 Ill.Dec. 955, 957 (1989) ("A minor child living at home is competent to give lawful consent to search; age is never an automatic barrier to capacity to consent.”); Hol
 
 man v. State,
 
 816 N.E.2d 78, 82 (Ind.Ct.App.2004) (”[C]ourts should look to the totality of the circumstances ... such as the age, intelligence and maturity of the minor, the scope of the consent to enter, and whether the minor had the right to invite die person to the house.”);
 
 State v. Folkens,
 
 281 N.W.2d 1 (Iowa 1979) (holding that a 14 year-old who had a key to the house and was expected to do the household shopping, cooking, and laundry had authority to consent to the search of the bedroom she had been using for the past several weeks);
 
 State v. Kriegh,
 
 23 Kan.App.2d 935, 937 P.2d 453 (1997) (holding that minority status alone does not prevent one from giving consent; a court must look at the surrounding circumstances to see if the minor had authority to consent, if the consent was given knowingly and voluntarily, and if the scope of the consent requested and given was proper);
 
 State v. Hargrave,
 
 631 So.2d 1208, 1212 (La.Ct.App.1994) (”[S]ince defendant failed to even allege that he manifested an expectation of exclusivity over the greenhouse, we see no error in the trial judge’s determination that [the minor child] had authority to consent to a search of the greenhouse located in the backyard.”);
 
 In re Anthony P.,
 
 293 Md. 146, 442 A.2d 975 (1982) (holding that the trial court did not err in finding that a 16-year-old had apparent authority and sufficient relationship to the premises to provide third-party consent to a request to search);
 
 State v. Lotion,
 
 527 N.W.2d 840, 844 (Minn.Ct.App. 1995) (holding that under the totality of the circumstances a "mature and intelligent 10-year-old” could provide valid third-party consent to search her parent’s apartment);
 
 State v. Griffin,
 
 756 S.W.2d 475 (Mo. 1988) (holding that a 13-year-old resident of the house had authority to consent to the entry to common areas of the house);
 
 State v. Butzke,
 
 7 Neb.App. 360, 584 N.W.2d 449 (1998) (holding that a minor child's third-party consent to search is ultimately subject to the same analysis as any other third-party-consent case);
 
 People v. Hardgers,
 
 222 A.D.2d 1038, 636 N.Y.S.2d 517 (1995) (holding that the trial court did not err in denying suppression motion when it found that police reasonably relied on the consent of a 16-year-old when the circumstances indicated that she had the authority to consent);
 
 State v. Scott,
 
 82 Or.App. 645, 729 P.2d 585 (1986) (rejecting a per se rule that minors cannot provide valid third-party consent and holding that age is just one factor to be considered);
 
 Commonwealth v. Maxwell,
 
 505 Pa. 152, 477 A.2d 1309 (1984) (holding that minority status alone does not prevent one from giving consent; evidence supports a finding that 14-year-old made a rational decision when she allowed police to search her house);
 
 State v. Jones, 22
 
 Wash.App. 447, 451-52, 591 P.2d 796, 799 (1979) ("Some minors, simply by reason of their age or immaturity, may be incapable of consenting to a police entry; others may be overawed and will permit entry despite strict parental instructions or admonitions not to permit entry. The record in this case appears to be devoid of either impediment.”).
 

 Three states seem willing to allow minors to provide valid third-party consent to a request to conduct a warrantless search of a parent’s house, but the doctrine is not yet a part of that state's jurisprudence due to the factual situations presented in similar cases.
 
 See, Commonwealth v. Hatcher,
 
 199 S.W.3d 124 (Ky.2006) (holding that the trial court could not have found that a minor provided valid third-party consent because it did not determine whether the minor had common authority over the premises nor did it determine if the minor's action were voluntary);
 
 Hembree v. State,
 
 546 S.W.2d 235 (Tenn.Crim.App. 1976) (holding that a child under the age of 18 could not provide valid third-party consent to search his parent's house when the parents are equally accessible to give or withhold consent);
 
 Reynolds v. State,
 
 781 S.W.2d 351 (Tex.Ct.App.1989) (holding that a 12-year-old
 
 *531
 
 who acted under the direction of a hostile ex-husband and who did not have authority to go into his mother’s bedroom or bathroom could not consent to a police search of the mother's private bathroom).
 

 Two states’ caselaw currently indicates that minors cannot provide valid third-party consent; however, these jurisdictions have not addressed the issue since the United States Supreme Court handed down its decision in
 
 Matlock. See, State v. Malcom,
 
 58 Del. 1, 6, 203 A.2d 270, 273 (1964) ("It goes without saying that if the State had to rely on the consent of the minor son necessarily I would have to hold that such consent would be insufficient [quoting case where the court held that a minor daughter could not consent to the search of her father’s house.]”);
 
 May v. State,
 
 199 So.2d 635 (Miss. 1967) (holding that a son could not waive the right of the father to object to the warrantless search of his house).
 

 Only one state categorically rejects the theory that a minor can provide valid third-party consent to search a parent’s house.
 
 See, State
 
 v.
 
 Schwarz,
 
 332 Mont. 243, 247, 136 P.3d 989, 992 (2006) (”[I]n light of Montana's enhanced right to privacy under [the Montana State Constitution], consent, as an exception to the warrant requirement must be narrowly construed. Accordingly, we hold that a youth under the age of sixteen does not have the capacity or authority to relinquish her parents' privacy rights.”). The remaining states and the District of Columbia apparently have not considered the issue.