[No. 29240-1-III.   Division Three.   August 28, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. LUIS ANTONIO CORDERO, *Appellant*.

354

*Marie J. Trombley,* for appellant.

*Shawn P. Sant, Prosecuting Attorney,* and *David W. Corkrum, Deputy,* for respondent.

¶1 SIDDOWAY, J. — Luis Cordero appeals his conviction of burglary in the first degree, citing overwhelming evidence that the victim prevented him from leaving her home. Nonetheless, because the jury could find that he committed the crime before being detained or that the victim sought only to prevent him from leaving with her 14-year-old daughter, the evidence was sufficient. We also reject his assignment of error to the trial court's refusal to instruct the jury on a statutory defense to criminal trespass in this burglary prosecution. His challenge to the court's imposition of gang-related prohibitions during his term of community custody is well grounded, however, as there is no evidence that his was a gang-related offense. We affirm his conviction but remand with instructions to strike the gang-related prohibitions.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In March 2010, Priscilla Garcia was living with her daughter, VS, in a residential motel room in Pasco. She had only recently relocated to Pasco from Grandview, leaving her younger children in Grandview with their grandmother, in an effort to get VS away from Luis Cordero, whom she

learned VS was dating. At the time, VS was 14 years old; Mr. Cordero was 21. Ms. Garcia's objection to the relationship was known to Mr. Cordero. She had obtained restraining orders against him in the past that had expired. But shortly before the events leading to his arrest she had warned Mr. Cordero over the phone, after interrupting his attempt to speak with VS, that if he came around, she "was gonna call the cops on him." Report of Proceedings (RP) at 103. On March 27, Ms. Garcia had contacted Officer Ismael Cano of the Pasco Police Department about her concern that Mr. Cordero would not stay away, seeking "information on what she could do in that situation." RP at 66.

¶3 That weekend, Ms. Garcia's son, GJ, who was about a year younger than VS, came to Pasco to visit his mother and sister. On Sunday, March 28, Ms. Garcia, VS, and GJ were all present in the motel room when there was a knock at the door, which turned out to be Mr. Cordero. Ms. Garcia's, VS's, and GJ's testimony differs as to the circumstances under which Mr. Cordero entered the motel room and those that prevented him, temporarily, from leaving.

¶4 GJ would later testify that there was a knock at the door, VS opened it, she invited Mr. Cordero in, and he entered. He testified that when his mother heard Mr. Cordero's voice she initially told him to "get out of here," but then closed the door and said to him, "you're gonna stay," adding that she was going to call the police. RP at 81. GJ testified that Mr. Cordero was trying to leave but that Ms. Garcia blocked him. He testified that eventually Mr. Cordero was able to leave, although only by pushing Ms. Garcia, who was holding onto Mr. Cordero by his hands and shirt in her effort to detain him. Mr. Cordero left with VS. Under focused questioning by attorneys for the State and for the defense, GJ expressed his perception that in trying to leave the motel room, Mr. Cordero was trying to leave with VS, not by himself.

¶5 Ms. Garcia testified that after Mr. Cordero knocked on the door it was she who opened the door, not VS,

although VS then pushed past her and let Mr. Cordero inside. Ms. Garcia claims that she promptly told him to leave. According to her, he ignored her and walked toward the back of the room, which Ms. Garcia presumed was in order to help VS gather her belongings to leave. As Mr. Cordero walked through the room, Ms. Garcia testified that he pulled a gun out of his pocket. Ms. Garcia used her phone to call 911, moving toward the door to block Mr. Cordero and VS from leaving, because she "knew they were gonna both run off." RP at 106. Asked at trial to explain why she stood in front of the door to block Mr. Cordero after earlier telling him to leave, she testified:

> I stood at the door because at that time and that moment I didn't care what happened. You know, he was not gonna take my daughter this time.

RP at 105. And later,

> I stood in front of the door because I wanted him to get caught. Because I did not want him to leave with my daughter anymore. Like she had, you know, in the past.

RP at 108. Ms. Garcia denied that she had ever grabbed Mr. Cordero by his hands or by his shirt in an effort to prevent him from leaving.

¶6 VS testified that she answered the door, not her mother, and that when she told her mother it was Mr. Cordero at the door her mother told her to invite Mr. Cordero inside. She claims that her mother told Mr. Cordero to sit down and asked him if he had any money. He denied having any. VS testified that other individuals who were waiting for Mr. Cordero then called him by phone and came to the door looking for him. According to VS, Ms. Garcia told the individuals who came to the door that Mr. Cordero was not going anywhere, and they should leave. After Ms. Garcia again pressed Mr. Cordero for money, "or else he wasn't leaving," VS claims that she pushed her mother out of the way, her mother fell, Mr. Cordero left, and VS followed. RP

at 171. She denies that her mother ever told Mr. Cordero to leave the motel room.

¶7 GJ and Ms. Garcia both agree that while in the motel room, Mr. Cordero removed a handgun from his pocket. He did not point the gun at anyone but held it so that they would see it. He then clicked what they believed to be the hammer repeatedly, even after returning the gun to his pocket. GJ testified that for the most part, Mr. Cordero had the gun in his pocket, clicking the hammer within his pocket. He testified that Mr. Cordero's continual clicking of the gun made him feel "not very safe" "[b]ecause he probably could have shot my mom." RP at 83.

¶8 A recording of Ms. Garcia's 911 call was played at trial, in which she told the 911 dispatcher:

> There's a male here that's not supposed to be here and the cops told me to immediately call them because he had beat up a guy.
>
> And he's inside my house right now, and you know, I'm not—I'm standing by the door. Because he's going out with my daughter, my 14-year—my 14-year-old daughter.
>
> . . . .
>
> And he's right here trying to push me out of the way.
>
> . . . .
>
> . . . And he's got a gun, I believe.
>
> And I'm just tired of this boy.
>
> . . . .
>
> . . . Him and my daughter are both right now trying to push me out of the way.

Ex. 4.

¶9 Officers responded to the 911 call, recognized Mr. Cordero and VS on the street from Ms. Garcia's description, and arrested both. The police found Mr. Cordero's unloaded .45 caliber pistol and a small bag of marijuana in nearby bushes.

¶10 Mr. Cordero was initially charged with residential burglary, a class B felony, but the State later amended the

information to charge him with burglary in the first degree, a class A felony. The original and amended informations both asserted that Mr. Cordero had entered or remained unlawfully in Ms. Garcia's motel room with the intent to commit assault.

¶11 At trial, the court declined Mr. Cordero's request that it instruct the jury on a statutory defense to the crime of criminal trespass, namely, that the defendant reasonably believed that the owner or a person empowered to license access to the room would have licensed him to enter or remain. Responding to the defense's objection when it refused to give the instruction, the court said:

> It appeared from the modified [WPIC] 19.06[1] that you [supplied] that maybe the first sentence was appropriate—but certainly not the last sentence, since trespass is not a lesser included of the charge of burglary in the first degree. . . .
>
> Also, the Court did instruct on Number 8, "A person enters or remains unlawfully in or upon premises when he or she has not been licensed, invited, or otherwise privileged to so enter or remain." That would be essentially the same as your first sentence of [WPIC] 19.06 or close thereto. So the Court believes that you can argue the theory of the case.

RP at 179-80.

¶12 A little over an hour into the jury's deliberations, it sent out the following question to the trial court: " 'Is it lawful for a person who has been restricted from entering to be invited by a minor?' " RP at 208. After conferring with the parties, the court responded, without objection from either party, "Refer to the Court's Instructions on the Law." RP at 209. The jury returned a verdict of guilty later the same afternoon.

¶13 Mr. Cordero was sentenced to 17 months' incarceration and 18 months of community custody. As part of his

---

[1] WPIC 19.06 is the pattern instruction developed to be given in criminal trespass cases in which one of the statutory defenses provided by RCW 9A.52.090 is supported by the evidence. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 19.06 (3d ed. 2008) (WPIC).

community custody, the court ordered Mr. Cordero to have "[n]o contact with known gang members" and "[n]o possession of gang paraphernalia including clothing, insignia, medallions, etc." Clerk's Papers (CP) at 38. Mr. Cordero timely appealed.

## ANALYSIS

¶14 Mr. Cordero challenges the sufficiency of the evidence to sustain his conviction and assigns error to the trial court's refusal to instruct the jury on the statutory defense to criminal trespass and to the gang-related prohibitions imposed during his community custody, which he argues are unrelated to the crime of which he was convicted. We address the issues in turn.

### I

¶15 Mr. Cordero first challenges the sufficiency of the evidence. To convict him of the crime of burglary in the first degree, the State was required to prove each of the following elements beyond a reasonable doubt, as reflected in the court's to-convict instruction:

(1) That on or about the 28th day of March, 2010, the defendant entered or remained unlawfully in a building;

(2) That the entering or remaining was with intent to commit a crime against a person or property therein;

(3) That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice in the crime charged was armed with a deadly weapon or assaulted a person; and

(4) That the acts occurred in the State of Washington.

CP at 60 (Instruction 7).

¶16 Mr. Cordero argues that the State's evidence was insufficient to prove the first and second elements. With respect to the first, he argues that the evidence was insufficient to prove that he unlawfully *entered* Ms. Gar-

cia's motel room because it establishes that he was invited inside either by Ms. Garcia or by VS, either of whom could grant permission to him to enter or remain. He argues that the evidence was insufficient to prove that he *unlawfully remained* because it establishes that Ms. Garcia affirmatively prevented him from leaving. He also argues that there was insufficient evidence that he intended to commit a crime against a person or property in the motel room. We hold that the evidence was sufficient to support finding the first and second elements.

¶17 Due process requires the State to prove all elements of the crime beyond a reasonable doubt. *State v. Washington*, 135 Wn. App. 42, 48, 143 P.3d 606 (2006). Evidence is sufficient to support a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). " 'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.' " *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004) (citing *State v. Cord*, 103 Wn.2d 361, 367, 693 P.2d 81 (1985)), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

¶18 *Unlawfully Entering Premises.* "A person 'enters or remains unlawfully' in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(5).[2] Mr. Cordero relies on *State v. J.P.* for the proposition that "[o]nly the person who resides in or otherwise has authority over the property may

---

[2] We quote the current version of RCW 9A.52.010, which was amended by Laws of 2011, chapter 336, section 369 to make the language gender neutral and whose definitions have been alphabetized pursuant to RCW 1.08.015(2)(k).

grant permission to enter or remain." 130 Wn. App. 887, 892, 125 P.3d 215 (2005) (citing *State v. Grimes*, 92 Wn. App. 973, 978, 966 P.2d 394 (1998)); Br. of Appellant at 7-8. From this, Mr. Cordero argues that because VS was residing with her mother at the motel, her invitation sufficed. He also cites by analogy to cases in which Washington courts have held that children, and particularly teenagers, may consent to entry by law enforcement officers into their parents' homes. Br. of Appellant at 8-9 (citing *State v. Jones*, 22 Wn. App. 447, 451-52, 591 P.2d 796 (1979)).

¶19 Neither *J.P.* nor *Grimes* involved a defendant who was invited into a home by a teenaged resident, let alone the invitation of a teenager that was immediately countermanded by the parent in whose home the teen resides. In relying on the cited language in *J.P.* and *Grimes* for the proposition that VS's invitation necessarily sufficed, Mr. Cordero too broadly reads what is dicta in relation to the holding of those two cases.

¶20 And the reasoning of the *Jones* case that teenagers can, in appropriate circumstances, provide the consent necessary for law enforcement officers to enter a home explicitly undercuts Mr. Cordero's position. *Jones* adopted what it characterized as a "sound rule," 22 Wn. App. at 452, announced by the Ninth Circuit Court of Appeals in *Davis v. United States*, 327 F.2d 301, 304 (9th Cir. 1964), in which the court provided the following explanation why the officers' entry in that case at the invitation of the eight-year-old daughter of the owners was not without consent:

> When the defendant was on the stand, he made no claim that [his daughter's] actions in opening the door or inviting the men in was in any way unusual or unauthorized, nor did [his daughter] testify that the opening of the door or telling the officers to come in was against the instructions of either of her parents. From all the evidence before it, the trial court was entitled to conclude then that her opening the door and invitation to enter were not unusual or unexpected or unauthorized acts.

The rule of *Davis* adopted by *Jones* was its conclusion that a child-resident's invitation to enter premises can be effective "in the absence of any indication in the record that her opening the door and invitation to enter were not unusual or unexpected or unauthorized acts." 22 Wn. App. at 452.

¶21 In a situation like this, where a parent and her child disagree about who should be allowed entry into the home, we find Washington cases that address the limits on a child's own right to enter and remain in a parent's home to be most instructive. In *State v. Howe*, 116 Wn.2d 466, 805 P.2d 806 (1991), the Supreme Court reviewed three cases in which minors were charged with burglary of their parents' homes and defended on the basis that the parents' statutory obligation to provide for dependent children gave rise to a privilege in the child to enter the home. The court held that a dependent child can be convicted of burglary of his or her parent's home where the parent has expressly and unequivocally ordered the child out of the parental home and provided some alternative means of assuring that the parents' statutory duty of care has been met. *Id.* at 468-69. Significantly for our purposes, *Howe* cited with approval and implicitly adopted the unsurprising principle that the parents' right of possession to the family home is superior to that of their children. *Id.* at 476 (citing *In re Interest of G.L.*, 73 Ill. App. 3d 467, 391 N.E.2d 1108, 29 Ill. Dec. 425 (1979)).

¶22 In *State v. Cantu*, 156 Wn.2d 819, 825, 132 P.3d 725 (2006), the Supreme Court held that a child's license to enter the family home, or any room within, could not only be limited expressly but also be limited by clear implication. Applying that standard, it held that a mother's locked bedroom door gave her 17-year-old son implied notice that any permission to enter the home did not extend to her bedroom. Evidence that he kicked in the door and entered her bedroom was therefore sufficient evidence of an unlawful entry. If the parents' superior right entitles them to order their own dependent children out of the home and to limit their children's license to enter rooms within the

home, it surely entitles them to limit and countermand their children's invitations to others.

¶23 Cases from other jurisdictions have similarly found that a child-resident's authority to license entry into his or her parent's home yields to an objection by the parent. In *Holman v. State*, 816 N.E.2d 78 (Ind. Ct. App. 2004), the Indiana court looked to cases from other jurisdictions to decide whether the 17-year-old daughter of homeowners could consent to her boyfriend's entry into her room, in her absence, to retrieve his belongings. The court, analogizing to cases involving whether child-residents can authorize entry into the family home by law enforcement, applied a totality of circumstances analysis. It identified one factor as being "whether the minor had the right to invite the person to the house," which it analyzed in terms of what the daughter and her boyfriend knew about the parents' objections to his presence. *Id.* at 82. Because the evidence showed that both the daughter and her boyfriend knew that the parents disapproved of his being at the home, the court concluded that she could not effectively consent to his presence. *See also People v. Martin*, 115 Ill. App. 3d 103, 449 N.E.2d 1039, 1041, 70 Ill. Dec. 692 (1983) (holding that a minor may have the ability to authorize entry into his parents' house for lawful purposes, but not for the unlawful purpose of stealing his parents' jewelry); *State v. Brown*, 176 N.C. App. 72, 626 S.E.2d 307, 312 (2006) (focusing on the purpose of the entry and whether a child-resident had authority to consent to entry for that purpose).

¶24 Here, there was evidence not only that Ms. Garcia promptly ordered Mr. Cordero to leave, but also that Mr. Cordero was aware at all times that Ms. Garcia objected to his being in her home. Evidence of her known objection included the prior restraining orders, the fact that she had moved to Pasco to distance her daughter from Mr. Cordero, Ms. Garcia's recent statement to Mr. Cordero that if he came around she would call police, and his own conduct brandishing his handgun and repeatedly clicking its ham-

mer as he waited for VS to leave with him. The jury could reasonably infer that Mr. Cordero was using the handgun to intimidate Ms. Garcia, knowing that she would not willingly allow him to remain.

¶25 The State's evidence sufficed to establish that VS and Mr. Cordero were aware of what was, by March 2010, Ms. Garcia's express and unequivocal disapproval of his presence at the home. This was sufficient to establish that any invitation by VS was ineffective and, since hers was the only invitation when we view the evidence in the light most favorable to the State, that Mr. Cordero entered unlawfully.

¶26 *Unlawfully Remaining at the Premises.* Faced with Mr. Cordero's argument that he was invited to enter the motel room, the prosecution relied in the alternative on an argument that after having entered, he remained unlawfully.[3] In the case of an element that may be proved by alternative means, we ordinarily test whether the evidence was sufficient to prove each of the alternative means because we cannot know the means that individual jurors relied upon. *State v. Arndt*, 87 Wn.2d 374, 377-78, 553 P.2d 1328 (1976).

¶27 The "unlawfully enters or remains" element of burglary is somewhat anomalous when it comes to sufficiency analysis as an alternative means element, however. In many cases the reviewing court can tell that the verdict was based on only one means, which was supported by substantial evidence; in such a case, the court need not examine the other means. For instance, where a defendant's initial entry was clearly lawful, and the lawfulness of the entry is not otherwise disputed, no rational juror could conclude otherwise, and a jury instruction presenting the statutory alternative means raises no unanimity concerns. *State v. Allen*, 127 Wn. App. 125, 135, 110 P.3d 849 (2005).

---

[3] In closing argument, for example, the prosecutor stated, "I think we've proven each of those parts of the elements beyond a reasonable doubt, but you only need find one on each. Either he entered unlawfully or remained unlawfully." RP at 205.

¶28 Where a defendant's initial entry was clearly unlawful, the sufficiency of evidence that he or she remained unlawfully ordinarily follows automatically. We agree with the reasoning of *Allen* that when a defendant has entered unlawfully, he ordinarily "cannot be said to have any license or privilege to be in the building at all. Consequently, the defendant's continuing presence in the building satisfies the statutory definition of unlawful remaining." *Id.* at 133. Indeed, as *Allen* notes, the "unlawfully remaining" means of committing burglary "is intended primarily for situations in which the initial entry to a building is lawful." *Id.* at 134. Courts from some jurisdictions even construe the unlawfully remaining means as limited to situations where there is a lawful entry. *Id.*[4]

¶29 Here, however, Mr. Cordero relies on the unusual circumstance that after having entered he attempted to leave, but was delayed in his ability to do so by Ms. Garcia, who blocked his way. The fact that Ms. Garcia temporarily prevented his departure was uncontested and reflected in the recording of her 911 call. The evidence suggests that she was trying to prevent him from leaving with her daughter or to hold him for arrest, or both. In light of this unusual evidence and the possibility that jurors relied on the "remains unlawfully" alternative on which they were instructed, we must examine whether the evidence was sufficient to establish that means.

¶30 If Ms. Garcia prevented Mr. Cordero from leaving the motel room on any terms, that period of his detention should not count as unlawful remaining for purposes of the first element of first degree burglary. Whether he was guilty of unlawfully entering or remaining would have to depend on what happened before he was detained. Here,

---

[4] Where the initial entry was *lawful*, Washington courts have held that unlawful remaining occurs when a person has lawfully entered a dwelling pursuant to a license, invitation, or privilege; the invitation, license, or privilege is expressly or impliedly limited; the person's conduct violates such limits; and the person's conduct is accompanied by intent to commit a crime in the dwelling. *State v. Crist*, 80 Wn. App. 511, 514, 909 P.2d 1341 (1996).

evidence established that he entered the motel room far enough and stayed long enough for Ms. Garcia to interpose herself between him and the door in the effort to detain him. The criminal code does not establish a minimum duration for a burglary. Mr. Cordero provides no reason or argument why the crime he committed before being detained should be negated or excused because Ms. Garcia was able to stop and detain him in hopes of having him arrested.

¶31 If, instead, Ms. Garcia was trying to prevent Mr. Cordero only from leaving with VS, the entire period of his detention should be considered time in which he unlawfully remained in Ms. Garcia's motel room. Mr. Cordero was not entitled to ignore Ms. Garcia's order that *he* leave because he wanted to leave with her 14-year-old daughter.

¶32 Whatever the reason or reasons for Ms. Garcia's interference with Mr. Cordero's departure, substantial evidence still supports a finding that he unlawfully remained, at least for a time, in Ms. Garcia's room.

¶33 *Intent To Commit a Crime.* Mr. Cordero also challenges the sufficiency of evidence to establish the second element of first degree burglary: that he intended to commit a crime against a person or property inside the burglarized premises. RCW 9A.52.020. The State is not required to prove the intent to commit a specific crime. *State v. Bergeron,* 105 Wn.2d 1, 16, 711 P.2d 1000 (1985).

¶34 "In any prosecution for burglary, any person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein, unless such entering or remaining shall be explained by evidence satisfactory to the trier of fact to have been made without such criminal intent." RCW 9A.52.040. This statutory inference cannot relieve the State of its burden to prove each element of the crime without violating due process, so the State must show that the permitted inference more likely than not flows from the proven fact if the inference is offered as the sole

and sufficient proof of intent to commit a crime at the premises. *Cantu*, 156 Wn.2d at 826. The intent to commit a crime may also be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability. *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991) (citing *Bergeron*, 105 Wn.2d at 20).

¶35 Here the State did not rely solely on the statutory permissive inference; it offered evidence supporting its theory that Mr. Cordero intended to assault Ms. Garcia if necessary to take VS with him. The jury was instructed that

> [a]n assault is an intentional touching or striking of another person, with unlawful force, that is harmful or offensive regardless of whether any physical injury is done to the person. A touching or striking is offensive if the touching or striking would offend an ordinary person who is not unduly sensitive.
>
> An assault is also an act, with unlawful force, done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 64 (Instruction 11).

¶36 The State presented evidence that Mr. Cordero entered the motel room with the gun in his pocket, flashed it so that Ms. Garcia and GJ could see it, and then continued to make a clicking sound with the hammer. GJ was frightened and testified to his concern that Mr. Cordero would shoot his mother. The jury was entitled to infer that instilling apprehension and fear in Ms. Garcia was the intended result of Mr. Cordero's actions. The State also presented evidence that Mr. Cordero pushed Ms. Garcia to the ground while trying to leave the motel room.

¶37 All of these events happened in short order. There were no unforeseeable intervening circumstances that might suggest they were fortuitous developments rather than a part of Mr. Cordero's plan to leave with VS using

whatever intimidation or force was necessary to respond to Ms. Garcia's anticipated objection. " 'We may infer criminal intent from conduct, and circumstantial evidence as well as direct evidence carries equal weight.' " *Cantu*, 156 Wn.2d at 830 (J.M. Johnson, J., dissenting) (quoting *State v. Varga*, 151 Wn.2d 179, 201, 86 P.3d 139 (2004)). Substantial evidence supported the State's theory that Mr. Cordero intended to commit an assault.

## II

¶38 Mr. Cordero next assigns error to the court's refusal to give his proposed jury instruction based on the statutory defense to criminal trespass provided by RCW 9A.52-.090(3). His proposed instruction stated:

> A person has not entered or remained unlawfully in a building if the person reasonably believed that the owner of the premises or other person empowered to license access to the premises would have licensed the defendant to enter or remain.
>
> The State has the burden of proving beyond a reasonable doubt that the trespass was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to this charge.

CP at 100. Mr. Cordero argued that the instruction was warranted by *J.P.*, 130 Wn. App. 887, in which this court held that because statutory defenses to criminal trespass provided by RCW 9A.52.090 negate the unlawful entry element of that crime they should be available as a defense to residential burglary, which shares the same element.

¶39 We review a trial court's refusal to give a requested jury instruction de novo where the refusal is based on a ruling of law. *State v. White*, 137 Wn. App. 227, 230, 152 P.3d 364 (2007) (citing *State v. Walker*, 136 Wn.2d 767, 772, 966 P.2d 883 (1998)). Such is the case here, where the court did not question that there was a factual basis for Mr. Cordero's defense that he had entered by invitation, but

determined that he was not entitled to this further instruction on the significance of an invitation. Appellate courts "analyze a challenged jury instruction by considering the instructions as a whole and reading the challenged portions in context." *State v. Hayward*, 152 Wn. App. 632, 642, 217 P.3d 354 (2009) (citing *State v. Pirtle*, 127 Wn.2d 628, 656-57, 904 P.2d 245 (1995)). The jury instructions as a whole must correctly apprise the jury of the law and enable a defendant to argue his defense theory. *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984).

¶40  We recently addressed the identical issue in *State v. Ponce*, 166 Wn. App. 409, 269 P.3d 408 (2012). We explained in *Ponce* that *J.P.* did no more than recognize that—because the unlawful entry element of criminal trespass is identical to the unlawful entry element of burglary—a statutory defense to criminal trespass that negates its unlawful entry element must also negate the unlawful entry element of burglary. 166 Wn. App. at 411. *J.P.* did not hold or suggest that a defendant charged with burglary was entitled to have an additional jury instruction, addressing a statutory defense that the legislature has provided only for criminal trespass, where the court's jury instructions are already sufficient to apprise the jury of the law and enable the defendant to argue his theory of lawful entry.

¶41  In this case, the court's to-convict instruction informed the jury that in order to convict, it must find "[t]hat on or about the 28th of March, 2010, the defendant entered or remained unlawfully in a building." CP at 60 (Instruction 7). Another instruction defined "enters or remains lawfully" by stating, "A person enters or remains unlawfully in or upon premises when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." CP at 61 (Instruction 8). These instructions provided the jury with the applicable law and allowed Mr. Cordero to argue his theory that he had been invited into Ms. Garcia's room and was therefore at the premises lawfully.

¶42  Mr. Cordero makes the further argument that in this case, the jury's inquiry during its deliberations demon-

strates that it was confused and needed further instruction and, when denied further explanation, was left guessing as to the law. " 'Jurors should not have to speculate about [the law], nor should counsel have to engage in legalistic analysis or argument in order to persuade the jury as to what the instructions mean or what the law is.' " *State v. Olmedo*, 112 Wn. App. 525, 534-35, 49 P.3d 960 (2002) (alteration in original) (quoting *State v. Byrd*, 72 Wn. App. 774, 780, 868 P.2d 158 (1994), *aff'd*, 125 Wn.2d 707, 887 P.2d 396 (1995)).

¶43 At the time of the jury's question—which was, again, " 'Is it lawful for a person who has been restricted from entering to be invited by a minor?' "—the court consulted with counsel. RP at 208. Mr. Cordero immediately suggested that the court answer the question "yes" and the State suggested that it answer the question "no." *Id.* at 209. But neither objected when the court announced its decision to respond, instead, "Refer to Court's Instructions on the Law." *Id.* It is too late now for Mr. Cordero to complain about the court's response to the jurors' question. RAP 2.5(a).

¶44 Moreover, while Mr. Cordero attempts to tie the jury's doubt or confusion to the court's failure to give his proposed instruction, his instruction did not address the jury's concern. The jury's question zeroed in on VS's authority to extend an invitation that conflicted with her mother's order that Mr. Cordero stay away. If an instruction to clarify that issue of authority had been warranted, the correct instruction would have been that parents have a superior right of possession to the family home. *Howe*, 116 Wn.2d at 467. The trial court committed no error in refusing to give Mr. Cordero's proposed instruction.

### III

¶45 Mr. Cordero finally assigns error to the court's ordering, as a term of his 18-month community custody, that he have "[n]o contact with known gang members" and "[n]o possession of gang paraphernalia including clothing,

insignias, medallions, etc." CP at 17. He points out that no gang-related evidence was admitted in his trial. Indeed, the principal reference to such evidence was in connection with a motion in limine to exclude it, which was unopposed and was granted. The following exchange occurred at the time the court heard the parties' in limine motions:

> [DEFENSE COUNSEL]: . . . There was some reference of Miss Garcia, referring to my client as being a member of a gang in the area. I would ask that the Court exclude any mention of that. There is absolutely no evidence whatsoever in this particular case that it was gang related whatsoever. And the fact that my client may or may not be in a gang, I don't believe there is anything to substantiate that he is in a gang. That is very inflammatory, very prejudicial, and it's absolutely nowhere in the case.
>
> So I would ask that the Court exclude any mention of my client being in any gang and caution—at least in the particular issue—because I believe if this is mentioned during trial it would substantially prejudice my client in a way that cannot be removed by any sort of instructions that the Court can give the jury, and caution their witnesses to [e]nsure that that is not mentioned if the Court grants the motion. And I believe that the case law and the rules do necessitate that that is excluded.
>
> THE COURT: Thank you. [Requesting response from the State].
>
> [PROSECUTOR]: No objection, Your Honor.
>
> THE COURT: That is granted.

RP at 8-9. Despite the court's in limine ruling, Ms. Garcia still volunteered Mr. Cordero's gang association during trial, but the court sustained a defense objection, unopposed by the State, to strike the testimony.[5]

---

[5] The objectionable evidence was provided and stricken during the following testimony by Ms. Garcia:

> Q. Okay. And so you're saying that you opened the door, but [VS] allowed him in?
> A. Yeah, she pushed me out of the way. She is a big girl.
> Q. Okay. And allowed Mr. Cordero in the room?

¶46 The State argues that we should not address this issue because Mr. Cordero did not object to the conditions during the sentencing hearing. Beyond asking that we decline to address the issue, it argues only:

> There was evidence produced at trial supporting the record that the defendant was transient in nature, was armed with a hand gun and recently released from custody during the commission of this offense. The conditions of community custody imposed by the court could arguably be related to the restrictions on the appellant's association with gang members or possession of gang paraphernalia in light of his conviction of a serious crime.

Br. of Resp't at 10.

¶47 The Sentencing Reform Act of 1981, chapter 9.94A RCW, empowers trial courts to impose "crime-related prohibitions" during the course of community custody. RCW 9.94A.505(8). "Crime-related prohibitions" are orders directly related to "the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). Contrary to the State's position, a challenge that a community custody condition included in a defendant's sentence is illegal or erroneous may be challenged for the first time on appeal. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008). We review a court's imposition of crime-related prohibitions for abuse of discretion. *State v. Riley*, 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

¶48 "The philosophy underlying the 'crime-related' provision is that '[p]ersons may be punished for

---

A. Yes. And at that time, I noticed he—he arrived with some gang members. I don't know—

[DEFENSE COUNSEL]: Objection, Your Honor.
THE WITNESS: Okay.
[DEFENSE COUNSEL]: I would move to strike.
THE COURT: Yes. That last portion will be stricken.
RP at 121.

their crimes and they may be prohibited from doing things which are directly related to their crimes, but they may not be coerced into doing things which are believed will rehabilitate them.'" *Riley*, 121 Wn.2d at 36-37 (alteration in original) (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 4.5, at 4-7 (1985)). Given the absence of any evidence that Mr. Cordero's crime was gang related, the trial court had no tenable grounds for imposing the gang-related prohibitions; indeed, it appears that they might have been included in the proposed judgment by mistake. Because the prohibitions are not in any way crime related, they must be stricken.

¶49 We affirm Mr. Cordero's conviction but remand to the trial court to strike the gang-related prohibitions imposed during his community custody sentence.

KORSMO, C.J., and KULIK, J., concur.