# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  47683-5-II |
| Respondent, | |
| v. | |
| RICHARD RAY KASS, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Kass appeals his conviction of residential burglary, arguing that (1) the trial court erred by instructing the jury that it could infer Kass acted with the intent to commit a crime if he entered or remained in the building unlawfully, (2) the trial court erred by failing to enter written findings of fact and conclusions of law following a CrR 3.5 hearing, (3) the State failed to present sufficient evidence to support its calculation of Kass's offender score, and (4) the judgment and sentence contains a scrivener's error misstating the date of the jury verdict. Because the State presented sufficient evidence to support a permissive inference instruction and the trial court's failure to enter written CrR 3.5 findings was harmless, we affirm Kass's conviction.  But because the State failed to prove Kass's criminal history and because the judgement and sentence contains a scrivener's error, we vacate Kass's sentence and remand for resentencing.

FACTS

On the evening of February 8, 2014, Douglas Knipe arrived at his unoccupied house[1] to find that someone had broken open the back door to the garage, ransacked the house, and taken Knipe's belongings. Additionally, Knipe noticed that someone had kicked planks out of a fence bordering his backyard and a nearby Safeway parking lot. Knipe nailed the damaged door shut and left for the evening with the intention of returning to the house and filing a police report the following day.

The following day, Knipe noticed a truck idling in the Safeway parking lot near the broken fence adjacent to his backyard. Knipe then drove to the house and discovered that someone had broken open the same back door that he had nailed shut the night before. Knipe retrieved his handgun and started searching the house. During his search, Knipe saw Kass enter the house through a back sliding door and turn to the left in the direction of two duffel bags.[2] Knipe held Kass at gunpoint and called 911. At some point, Kass ran back out the sliding door, across the backyard, and through the damaged fence. Kass and an unidentified driver then drove away in the same truck that Knipe had seen idling near the fence.

Deputy Eric Swenson responded and observed multiple sets of foot tracks between the sliding door and the damaged portion of the fence, where Knipe described seeing the truck.

---

[1] Knipe was temporarily living in a nearby apartment, but he kept most of his belongings at the house.

[2] The back sliding door is not the same door that was previously broken open.

After Deputy Swenson left, Knipe noticed two unfamiliar duffel bags filled with his belongings to the left of the sliding door.

Several days later, police identified Kass as a suspect and went to his residence where they placed him under arrest, advised him of his *Miranda*[3] rights, and questioned him. Kass told the officers that he went to Knipe's house because he was interested in buying a motorcycle located in the backyard.[4] Kass said that he had followed a "clear and worn trail into the backyard of the house." 3A Verbatim Report of Proceedings (VRP) at 310. Kass then said that he knocked on the back sliding door, but there was no response. Kass explained that he was "looking around by the motorcycle when a guy came out the backdoor [sic] at him with a gun." 3A VRP at 310. Kass then admitted that the man told him, "Get on the ground" and "[s]how me your hands," but that Kass instead fled, and ran back to his truck. 3A VRP at 310. Kass told the officers he did not take anything from the residence and he never went inside the house.

The State charged Kass with one count of residential burglary.[5] Prior to trial, the court held a CrR 3.5 hearing to determine the admissibility of Kass's statements. At the conclusion of the CrR 3.5 hearing, the trial court orally ruled that Kass's statements were admissible because the uncontroverted evidence showed that Kass had agreed to speak with the officers after they

---

[3] *Miranda v. Arizona*, 348 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] Knipe kept a motorcycle in his backyard, but had not posted it for sale.

[5] RCW 9A.52.025.

properly administered *Miranda*, and that the officers had made no promises or threats. However, the trial court did not enter any written findings of fact and conclusions of law.

At trial, witnesses testified as stated above. In addition, Deputy Swenson testified that he did not see the duffel bags by the back door and that it looked like transients were living in Knipe's house. After the close of evidence and over Kass's objection, the trial court gave a permissive inference instruction allowing the jury to infer that Kass acted with the intent to commit a crime based on Kass's unlawful entry into Knipe's house. The jury found Kass guilty of one count of residential burglary.

At sentencing, the State calculated Kass's offender score as an 11, but presented no evidence of Kass's prior convictions. Kass neither objected to the State's calculation of his offender score nor stipulated to any prior convictions. Based on an offender score of 11, the trial court sentenced Kass to a standard range sentence of 73 months in prison.

Kass appeals.

## ANALYSIS

### I. SUFFICIENT EVIDENCE SUPPORTED A PERMISSIVE INFERENCE INSTRUCTION

Here, because Kass was charged with residential burglary, the State was required to prove that Kass entered or remained unlawfully in Knipe's house "with intent to commit a crime against a person or property therein." RCW 9A.52.025. Kass first argues that the trial court violated his right to due process[6] by giving the following permissive inference jury instruction:

---

[6] *See* U.S. CONST. amend. IV; CONST. art. I, § 7; CONST. art. 1, § 3.

> A person who enters or remains unlawfully in a building may be inferred to have acted with intent to commit a crime against a person or property therein. This inference is not binding upon you and it is for you to determine what weight, if any, such inference is to be given.[7]

Clerk's Papers at 34. We disagree.

We review a due process challenge to jury instructions de novo. *State v. Sandoval*, 123 Wn. App. 1, 4, 94 P.3d 323 (2004). Due process requires the State to prove every element of a crime beyond a reasonable doubt. *State v. Cantu*, 156 Wn.2d 819, 829, 132 P.3d 725 (2006). The State can prove elements of a crime through direct or circumstantial evidence. *State v. J.P.*, 130 Wn. App. 887, 893, 125 P.3d 215 (2005). The State may also use inferences to assist it in meeting its burden of proof. *Cantu*, 156 Wn.2d at 826.

A permissive inference instruction permits, but does not require, a jury to find a presumed fact from a proven fact. 156 Wn.2d at 822. Although presumptions and inferences are generally not favored in criminal law, the legislature has allowed for a permissible inference of criminal intent in burglary prosecutions. RCW 9A.52.040. And our Supreme Court has approved the permissive inference of intent to commit a crime "'whenever the evidence shows a person enters or remains unlawfully in a building.'" 156 Wn.2d at 826 (quoting *State v. Grimes*, 92 Wn. App. 973, 980 n.2, 966 P.2d 394 (1998)). However, the State is still required to persuade the jury that the inference follows from the proven facts. *Sandoval*, 123 Wn. App. at 5. Criminal intent may be inferred when the defendant's surrounding conduct and the surrounding

---

[7] The language of this instruction is identical to 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 60.05 (3d ed. 2008).

facts "plainly indicate such an intent as a matter of logical probability." *State v. Cordero*, 170 Wn. App. 351, 368, 284 P.3d 773 (2012).

We evaluate the propriety of a permissive inference instruction on a case by case basis, considering whether the State's evidence supported the inference. *Sandoval*, 123 Wn. App. at 4. The State's burden to support a permissive inference instruction depends on the amount of proof offered to prove the element. *See State v. Deal*, 128 Wn.2d 693, 699-700, 911 P.2d 996 (1996). Our Supreme Court explained, "'[W]hen permissive inferences are only part of the State's proof supporting an element [of a crime] and not the sole and sufficient proof of such element, due process is not offended if the prosecution shows that the inference *more likely than not* flows from the proven fact.'" *Cantu*, 156 Wn.2d at 826 (emphasis added) (internal quotation marks omitted) (quoting *Deal*, 128 Wn.2d at 700). However, when the inference is the "sole and sufficient" proof of an element, due process may require the prosecution to show the presumed fact flows beyond a reasonable doubt from the proven fact. *Deal*, 128 Wn.2d at 700 n.4.

Kass first argues that we should hold that the State was required to prove that the inferred fact flowed from the proved fact "beyond a reasonable doubt" because the inference was the sole and sufficient proof of his intent to commit a crime inside Knipe's house. We disagree and hold that the State was required to prove that the inferred fact "more likely than not" flowed from the proven fact because, contrary to Kass's assertions, the permissive inference was only part of the State's proof supporting the elemental fact of Kass's intent, rather than the "sole and sufficient proof." *See Cantu*, 156 Wn.2d at 826.

Kass argues that the inference was the sole and sufficient proof of his intent for a number of reasons, including: he told the police that he was interested in a motorcycle, and that there was a motorcycle in the back yard; the house looked like it had been occupied by transients and Kass was not a transient; Kass was cooperative with police; the two duffel bags were not connected to Kass; and Deputy Swenson did not see the two duffel bags.

But the State presented considerable other evidence that Kass intended to commit a crime against Knipe's property when he entered Knipe's house. First, immediately before encountering Kass, Knipe discovered that someone had broken open the same back door to the garage that Knipe had nailed shut the night before. Second, Kass had a truck idling, with a driver at the ready, near the damaged portion of Knipe's fence. Third, Kass entered the house through a sliding door from Knipe's backyard, and started to turn to the left in the direction of two duffel bags filled with Knipe's belongings. Fourth, there were multiple foot tracks between the sliding door and the damaged portion of Knipe's fence. Fifth, when Knipe called 911 while holding Kass at gunpoint, Kass fled the scene. Because the permissive inference was only part of the State's proof supporting Kass's intent, we apply the "more likely than not" standard.

Kass argues that even applying the less stringent "'more likely than not'" standard, the permissive inference instruction nonetheless violated his due process right to have the State prove every element of the offense. Br. of Appellant at 11. We disagree because, in light of the State's aforementioned evidence, the inference that Kass intended to commit a crime against Knipe's property flows "more likely than not" from the proven fact that Kass unlawfully entered

7

Knipe's house. *See Cantu*, 156 Wn.2d at 826. Kass's conduct and the surrounding facts plainly indicate Kass's intent "as a matter of logical probability." *Cordero*, 170 Wn. App. at 368.

The permissive inference instruction did not violate Kass's right to due process because the inference was not the sole and sufficient proof of Kass's intent, and the State presented sufficient evidence to support the inference that Kass "more likely than not" intended to commit a crime against Knipe's property when he entered Knipe's house. Considering the State's evidence, the trial court did not err by instructing the jury that it was permitted, but not required, to accept an inference of Kass's criminal intent based on Kass's entry into Knipe's house. Accordingly, we affirm Kass's conviction.

II. FAILURE TO ENTER WRITTEN FINDINGS PURSUANT TO CrR 3.5(c) WAS HARMLESS

Kass argues that the trial court erred by failing to enter written findings of fact and conclusions of law following its CrR 3.5 ruling on the admissibility of Kass's statements to law enforcement as required by CrR 3.5(c). But Kass neither challenges the trial court's oral findings and conclusions nor argues that his statements were improperly admitted at trial. He contends nonetheless that we should remand the matter to the trial court for entry of written findings and conclusions. Because the court's error was harmless, Kass's claim fails.

After a CrR 3.5 hearing, the trial court must state in writing "(1) the undisputed facts; (2) the disputed facts; (3) conclusions as to the disputed facts; and (4) conclusion as to whether the statement is admissible and the reasons therefore." CrR 3.5(c). A trial court's failure to enter written findings and conclusions required under CrR 3.5(c) is an error, but the error is harmless if

the court's oral findings are sufficient to permit appellate review. *State v. Cunningham*, 116 Wn. App. 219, 226, 65 P.3d 325 (2003).

Here, the trial court failed to enter written findings of fact and conclusions of law following its CrR 3.5 ruling on the admissibility of Kass's statements made to arresting officers. The trial court's oral findings would be sufficient to permit appellate review, but Kass does not raise any issues for us to review. He does not challenge the trial court's oral findings and conclusions of law, and he does not argue that his statements to law enforcement were improperly admitted at trial. He simply argues that the trial court failed to enter written findings and conclusions, and asserts that we must remand. So although the trial court should have entered written findings of fact and conclusions of law following its oral ruling, the error was harmless.

III. FAILURE TO PROVE CRIMINAL HISTORY REQUIRES REMAND FOR RESENTENCING

Kass argues, and the State concedes, that we should vacate Kass's sentence and remand for resentencing because the State failed to prove Kass's criminal history by a preponderance of the evidence for the purposes of calculating Kass's offender score. We accept the State's concession and remand for resentencing.

We review offender score calculations de novo. *State v. Hernandez*, 185 Wn. App. 680, 684, 342 P.3d 820 (2015), 185 Wn.2d 1002 (2016). The appropriate remedy for an improperly calculated offender score is remand for resentencing, permitting the State to present evidence of the defendant's past convictions. *See* RCW 9.94A.530(2); *State v. Cobos*, 182 Wn.2d 12, 15-16, 338 P.3d 283 (2014).

The State bears the burden of proving a defendant's criminal history by a preponderance of the evidence for the purposes of calculating an offender score. *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). To satisfy its burden, "the State must produce evidence: it cannot rely on presumptions or the defendant's silence." *State v. Jones*, 182 Wn.2d 1, 10, 338 P.3d 278 (2014); *see also Hunley*, 175 Wn.2d at 912 (holding that a sentencing court's finding of defendant's offender score based solely on a prosecutor's summary of criminal history and defendant's failure to object violated due process). The State may be relieved of its evidentiary burden only if the defendant *affirmatively* acknowledges its proffered criminal history. 175 Wn.2d at 912.

Here, the State submitted a declaration of criminal history summarizing Kass's prior convictions without providing any supporting evidence. Kass neither affirmatively acknowledged the declaration as correct nor stipulated to having any priors. Based on the State's summary of Kass's criminal history, the trial court adopted the State's suggested offender score of 11. The State's unsupported summary was insufficient to satisfy its burden of proving Kass's criminal convictions by a preponderance of the evidence. *See, e.g.*, 175 Wn.2d at 906, 915.

Therefore, the trial court erred by sentencing Kass with an offender score of 11 because the State failed to present sufficient evidence to establish Kass's criminal history. Thus, we

No. 47683-5-II

accept the State's concession, vacate Kass's sentence, and remand for resentencing, at which time the State may establish Kass's criminal history by a preponderance of the evidence.[8]

CONCLUSION

Because the State presented sufficient evidence to support a permissive inference instruction and the trial court's failure to enter written CrR 3.5 findings and conclusions was harmless, we affirm Kass's conviction. But we vacate Kass's sentence and remand for resentencing to allow the State to present evidence of Kass's criminal history.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Maxa, A.C.J.

_____
Melnick, J.

---

[8] Kass also argues, and the State concedes, that the judgment and sentence contains a scrivener's error misstating the date of the jury verdict. Because we remand for resentencing, we direct the sentencing court to correct the error and ensure that the judgment and sentence reflects the correct verdict date.

11