IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50366-2-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRIAN ANTHONY CRUTE, | |
| Appellant. | |

MAXA, C.J. – Brian Crute appeals his convictions of third degree assault and obstructing a law enforcement officer. The convictions arose out of an incident in which Crute physically resisted when officers attempted to detain him because of his erratic behavior.

We hold that (1) the trial court did not abuse its discretion when it precluded expert testimony regarding Crute's mental illness and his capacity to form the required intent to commit the offenses; (2) the trial court's instruction on third degree assault, which did not require the State to prove that Crute knew that the assault victim was a law enforcement officer, was proper; (3) the State presented sufficient evidence to prove both of his convictions; and (4) Crute's claims asserted in his statement of additional grounds (SAG) have no merit. Accordingly, we affirm Crute's convictions.

FACTS

On February 28, 2016, two Tacoma police officers responded to a call to check on the welfare of a man wandering in a Tacoma neighborhood. The officers were in uniform and in a

marked police car. The officers saw Crute, who was shirtless and sweating profusely, running around in the street and acting erratically.

The officers activated the overhead lights on their police car and attempted to detain Crute to speak with him. Crute physically resisted, including attempting unsuccessfully to punch one of the officers. Ultimately, five uniformed police officers, four firemen, and three taser charges were required to subdue Crute and get him into an ambulance.

The State charged Crute with two counts of third degree assault involving two different officers and one count of obstructing a law enforcement officer.

Before trial, Dr. Phyllis Knopp conducted a forensic evaluation to determine if Crute had the requisite mental state for the charged crimes. She concluded that Crute had the capacity to form the requisite mental state.

Dr. Brett Trowbridge also evaluated Crute. The State filed a motion to exclude Dr. Trowbridge as an expert witness. In argument, both the State and Crute quoted from Dr. Trowbridge's report.[1] Dr. Trowbridge stated, "It appears to me Mr. Crute suffers from schizophrenia and from PTSD." Report of Proceedings (RP) at 25. But he further stated,

> At this point, I don't have sufficient information to be able to state within reasonable scientific certainty that Mr. Crute's mental illness or intoxication diminished his capacity to form the requisite intent for the crimes charged at the time of the alleged incident, but *it seems possible*. And it's consistent with Greater Lakes' previous findings. Given that the police themselves felt that he was either on drugs or mentally ill, [in] my opinion a diminished capacity defense *is a realistic possibility*.

RP at 32-33 (emphasis added).

---

[1] The report itself is not in the record and the parties provided no other specific information about Dr. Trowbridge's opinions.

The trial court granted the State's motion. Because the trial court excluded Dr. Trowbridge's testimony, the court also granted the State's motion to preclude reference to any mental disease or defect that Crute may have been diagnosed with.

At trial, the officers testified to the facts outlined above. Crute testified that at least at first, he did not know that the people accosting him were police officers. He thought he was being robbed, and thought that he might be shot in the back of the head if he laid down on the ground. Later he stated that the police officers were not doing their job and called them terrorists.

A jury found Crute guilty of one count of third degree assault, acquitted him of the other count of third degree assault, and found him guilty of obstructing a law enforcement officer. Crute appeals his convictions.

## ANALYSIS

A. EXPERT WITNESS TESTIMONY

Crute claims that the trial court erred in excluding Dr. Trowbridge's testimony about Crute's mental illness and his capacity to form the required intent to commit the charged offenses because the testimony was relevant and would have been helpful to the jury. We disagree.

1. Legal Principles

Crute claims that Dr. Trowbridge's testimony should have been admitted to support his diminished capacity defense. Admissibility of expert testimony regarding diminished capacity is determined under ER 401, ER 402, and ER 702. *State v. Atsbeha*, 142 Wn.2d 904, 917, 921, 16 P.3d 626 (2001).

ER 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Testimony should be admitted under ER 702 when (1) the witness is qualified as an expert, (2) the expert's opinion is based on a theory generally accepted by the scientific community, and (3) the expert's testimony is helpful to the trier of fact. *State v. Rafay*, 168 Wn. App. 734, 784, 285 P.3d 83 (2012). Testimony is helpful when it concerns issues outside common knowledge of laypersons and is not otherwise misleading. *See id.*

Expert testimony must be relevant to be helpful to the jury. *Atsbeha*, 142 Wn.2d at 917-18, 921. ER 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is inadmissible. ER 402.

We review for abuse of discretion a trial court's decision regarding the admission of expert testimony under ER 702. *State v. Green*, 182 Wn. App. 133, 146, 328 P.3d 988 (2014). An abuse of discretion occurs in this context when no reasonable person would adopt the trial court's ruling. *Atsbeha*, 142 Wn.2d at 913-14.

The Supreme Court in *Atsbeha* established the standard for admissibility of expert testimony regarding diminished capacity. 142 Wn.2d at 914-21. "To maintain a diminished capacity defense, a defendant must produce expert testimony demonstrating that a mental disorder, not amounting to insanity, impaired the defendant's ability to form the culpable mental state to commit the crime charged." *Id.* at 921. Further, to satisfy either ER 401 or ER 702 the expert testimony "must have the tendency to make it more probable than not" that the

defendant's mental disorder impaired his or her ability to form the required mental state. *Id.* at 918.

The court emphasized that to be relevant and therefore helpful to the trier of fact under ER 702, the expert's opinion must show a reasonable relationship between a defendant's mental disorder and his ability to form the mental state charged in the crime. *Id.* at 921.

> It is not enough that a defendant may be diagnosed as suffering from a particular mental disorder. The diagnosis must, under the facts of the case, be capable of forensic application in order to help the trier of fact assess the defendant's mental state at the time of the crime. The opinion concerning a defendant's mental disorder must reasonably relate to impairment of the ability to form the culpable mental state to commit the crime charged.

*Id.*; *see also State v. Clark*, 187 Wn.2d 641, 651, 389 P.3d 462 (2017) ("diminished capacity requires an expert diagnosis of a mental disorder and expert opinion testimony connecting the mental disorder to the defendant's inability to form a culpable mental state in a particular case").

Crute relies on *State v. Mitchell*, 102 Wn. App. 21, 997 P.2d 373 (2000), which was decided before *Atsbeha* but not mentioned in that case. In *Mitchell*, the defendant was charged with third degree assault after punching a law enforcement officer. *Id.* at 23. The defendant's expert was prepared to testify that he was "100 percent certain" that the defendant suffered from a mental disorder, probably a schizophrenic disorder. *Id.* at 24. In addition, he concluded that the defendant suffered from the severe mental disorder at the time of the incident. *Id.* However, the expert could not say with reasonable certainty that the disorder actually caused the defendant's capacity to be diminished at the time of the incident, only that it was possible. *Id.* at 24, 26. The trial court excluded the testimony. *Id.* at 24.

The appellate court reversed, holding that the expert's testimony was admissible under ER 702 even though the expert could not say whether the defendant's mental disorder was

*actually* affecting the defendant's capacity at the time of the incident. *Id.* at 27-29. The court stated:

> In a diminished capacity case, the expert's opinion must be helpful to the trier of fact in assessing the defendant's mental state at the time of the crime. An opinion is helpful if it explains how the mental disorder relates to the asserted impairment of capacity. Under this standard, it is not necessary that the expert be able to state an opinion that the mental disorder actually did produce the asserted impairment at the time in question – only that it could have, and if so, how that disorder operates.

*Id.* at 27 (citations omitted).

The court emphasized that the jury could have considered the expert's testimony and the defendant's behavior at the time of the incident and determined as the ultimate fact finder whether the defendant's capacity was diminished. *Id.*

> The jury, after hearing all the evidence, may find probability where the expert saw only possibility, and may thereby conclude that the defendant's capacity was diminished even if the expert did not so conclude.

*Id.* at 28.

*Mitchell* has not been overruled or found to be inconsistent with *Atsbeha*. The State does not argue on appeal that this court should disregard *Mitchell*.

2. Analysis

*Mitchell* holds that expert testimony regarding diminished capacity can be admissible even if the expert cannot state with reasonable certainty that the defendant's mental disorder actually impaired his or her capacity at the time of the offense. 102 Wn. App. at 27-29. The expert need only state that the mental disorder "could have" produced the asserted impairment at the time of the offense.

The court in *Atsbeha* did not expressly hold that an expert must state any opinion regarding diminished capacity on a more probable than not basis for the expert's opinion to be admissible, and therefore *Atsbeha* is not necessarily inconsistent with *Mitchell*. But the court in

*Atsbeha* did state that the expert's opinion must have a "tendency" to show more probably than not that the defendant's mental disorder impaired his or her capacity to form the required mental state to commit the charged offense. 142 Wn.2d at 918. The expert's opinion must reasonably relate the defendant's mental disorder to the impairment of his or her ability to form a culpable mental state. *Id.* at 918, 921.

Crute argues that the facts here are almost identical to the facts in *Mitchell*, and therefore under *Mitchell* the trial court should have admitted Dr. Trowbridge's testimony. However, there is one significant difference between the expert's opinion in *Mitchell* and Dr. Trowbridge's opinion. In *Mitchell*, the expert would have testified with reasonable certainty that the defendant had a mental disorder and that *he suffered from the disorder at the time of the offense*. 102 Wn. App. at 24, 28. Applying the *Atsbeha* standard, this testimony reasonably related the mental disorder to the defendant's capacity to form the required mental state to commit the charged offense.

But the limited portion of Dr. Trowbridge's report that is in the record is not sufficient to meet the *Atsbeha* standard. Dr. Trowbridge's proposed testimony was that Crute had a mental disorder, but he did not state that Crute was suffering from the disorder *at the time of the offense*. As a result, Dr. Trowbridge's testimony provided no direct connection between the mental disorder and any diminished capacity. Instead, Dr. Trowbridge stated that he did not have sufficient information to make that connection.

Our standard of review is abuse of discretion. *Green*, 182 Wn. App. at 146. Because Dr. Trowbridge did not give an opinion that Crute suffered from a mental disorder at the time of the incident with the officers, we cannot say that the trial court abused its discretion in excluding the expert testimony. Under *Atsbeha*, Dr. Trowbridge's opinion did not have a tendency to show

7

more probably than not that Crute's mental disorder impaired his capacity to form the required mental state to commit the charged offenses. *See* 142 Wn.2d at 918.

We hold that the trial court did not abuse its discretion in excluding Dr. Trowbridge's expert testimony.

B.      JURY INSTRUCTION ON THIRD DEGREE ASSAULT

Crute argues that the trial court erred in not instructing the jury that for the third degree assault charges, the State needed to prove that he knew that his victim was a law enforcement officer. We disagree.

1.      Legal Principles

In general, we review a trial court's choice of jury instructions for an abuse of discretion. *State v. Hathaway*, 161 Wn. App. 634, 647, 251 P.3d 253 (2011). However, we review de novo the refusal to give an instruction based on a ruling of law. *State v. Cordero*, 170 Wn. App. 351, 369, 284 P.3d 773 (2012).

Jury instructions are appropriate if they allow a defendant to argue his or her theories of the case, are not misleading, and when read as a whole properly state the applicable law. *State v. Aguirre*, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010). It is not error to refuse to give a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theories of the case. *Hathaway*, 161 Wn. App. at 647.

2.      Analysis

Under RCW 9A.36.031(1)(g), a person is guilty of third degree assault when he or she "[a]ssaults a law enforcement officer or other employee of a law enforcement agency who was performing his or her official duties at the time of the assault." The trial court's instruction

mirrored this statute. The applicable to convict instructions did not require the State to prove that Crute knew the alleged victim was a law enforcement officer.

Crute argues the court's instruction was erroneous because an essential element of third degree assault is that the defendant knew that the victim was a law enforcement officer. However, in *State v. Brown*, the Supreme Court specifically held that under the plain statutory language, the knowledge that the person assaulted is a police officer is not an element of RCW 9A.36.031(1)(g). 140 Wn.2d 456, 466-68, 998 P.2d 321 (2000).

Crute argues that the court's holding in *Brown* is incorrect and that *Brown* should be overruled. But we are bound to follow Supreme Court precedent. *State v. Winborne*, 4 Wn. App. 2d 147, 175, 420 P.3d 707 (2018). We apply *Brown* as controlling authority.

We hold that the trial court did not err in instructing the jury of the elements of third degree assault.

C.    SUFFICIENCY OF THE EVIDENCE

Crute claims that the State failed to present sufficient evidence to support his convictions because it failed to prove that he knew the persons he was resisting were law enforcement officers. We disagree.

1.    Standard of Review

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency of the evidence claim, the defendant admits the truth of the State's evidence and all reasonable inferences drawn from that evidence. *Id.* at 106. Credibility determinations are made

by the trier of fact and are not subject to review. *State v. Miller*, 179 Wn. App. 91, 105, 316 P.3d 1143 (2014). Circumstantial and direct evidence are equally reliable. *Id.*

    2.    Analysis

        a.    Third Degree Assault

Crute argues that the evidence was insufficient to prove that he knew the persons he allegedly assaulted were law enforcement officers. But as discussed above, knowledge that the assault victim is a law enforcement officer is not an element of third degree assault. Therefore, we reject this argument.

        b.    Obstructing a Law Enforcement Officer

Under RCW 9A.76.020(1), a person is guilty of obstructing a law enforcement officer "if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties." The trial court instructed the jury that the State had to prove that (1) "the defendant willfully hindered, delayed, or obstructed a law enforcement officer in the discharge of the law enforcement officer's official powers or duties," and (2) "the defendant knew that the law enforcement officer was discharging official duties at the time." Clerk's Papers at 89.

Crute argues that the State failed to prove that he knew he was obstructing law enforcement officers because he repeatedly asked for the police to come. At trial, Crute suggested that he thought the officers were not acting in their official capacities, characterizing them as terrorists.

But the State presented sufficient evidence for a jury to find that Crute knew he was obstructing law enforcement officers performing their official duties. First, all five officers were in uniforms identifying them as police officers. Second, the first officers to arrive activated the

fully marked police car's overhead lights, identified themselves as police officers, and asked to speak with Crute. And third, the officers informed Crute numerous times that they were police officers. This evidence was sufficient for a rational jury to infer that Crute knew he was dealing with law enforcement officers.

We hold that the State presented sufficient evidence to convict Crute of obstructing a law enforcement officer.

D.      SAG CLAIMS

In his SAG, Crute makes three assertions. First, he asserts that the trial court should have admitted a 911 recording identifying him because the description was inaccurate. This argument is beyond our scope of review because this argument was not made at trial, and the 911 call is not part of the record on appeal. We may consider only facts contained in the record. *State v. Estes*, 188 Wn.2d 450, 467, 395 P.3d 1045 (2017).

Second, Crute asserts that his arrest was illegal because it was supposed to be a welfare check, not a high-risk felony stop of a pedestrian who did not fit the description given by the 911 caller. Again, no such challenge was raised at trial and it relies in part on evidence outside the record. Therefore, we cannot review it.

Third, Crute asserts that neither the prosecutor nor the trial court read him his patient hospital rights, the prosecutor accused him of using PCP (phencyclidine) without the drug appearing in his urinalysis, and the prosecutor improperly argued against a drug offender sentencing alternative (DOSA). To the extent we characterize this as a claim of prosecutorial misconduct, we find no merit to the claim because Crute waived any such claims by not objecting at trial and he fails to show that any alleged error was so flagrant and ill-intentioned

that it could not have been cured with a proper instruction. *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012).

To the extent Crute is claiming that he should have received a DOSA, the trial court found that he was ineligible and instead ordered that the Department of Corrections make drug and mental health evaluations and treatment part of his community custody. The trial court did not abuse its discretion in failing to give Crute a DOSA. *See State v. Hender*, 180 Wn. App. 895, 900, 324 P.3d 780 (2014) (DOSA not reviewable). Further, it appears that Crute was ineligible for a DOSA because he had a previous DOSA in 2010. *See* RCW 9.94A.660(1)(g)[2].

## CONCLUSION

We affirm Crute's convictions of third degree assault and obstructing a law enforcement officer.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, C.J.

We concur:

_____
JOHANSON, J.

_____
LEE, J.

---

[2] RCW 9.94A.660(1)(g) was amended in 2016. LAWS OF 2016, Spec. Sess., ch. 29, § 524. Because those amendments do not affect our analysis, we cite to the current version of the statute.